[Crim. No. 6483.   Second Dist., Div. Three.   July 9, 1959.]

THE PEOPLE, Respondent, v. BETTY A. BELL, Appellant.

Martin S. Ryan and Ward Sullivan for Appellant.

Stanley Mosk, Attorney General, and Arthur C. de Goede, Deputy Attorney General, for Respondent.

SHINN, P. J.—In a jury trial defendant Betty A. Bell was found guilty of murder of the second degree. Her motion for new trial was denied and she appeals from the judgment and from the order denying her motion for new trial.

The defendant and her husband, the deceased, had resided at 2220 Vista Del Mar Avenue since 1954. On the evening of May 17, 1958, Mr. Bell was shot by a revolver held by defendant. He died from the wound two days later. Sergeant Theodore Rushton, responding to a radio call, arrived at the premises at 9:55 p.m., knocked on the door and receiving no response went to the north side of the house where he heard voices in the bedroom, asked to be permitted to enter and shortly thereafter was admitted by defendant. When questioned as to what had happened, defendant said: "He is in there. He will tell you." The officer went to the bedroom where he found Mr. Bell, clad in shorts, lying on a bed in a pool of blood; there appeared to be no disarrangement of the furniture and the premises seemed to be in order. A few minutes later Officer Berger arrived and both officers went into the bedroom where they found a black leather holster lying on the bed. In the front room they found a bullet lying on the floor under the coffee table, two or three blood spots on the rug nearby and a double action revolver. There were blood spots leading through the dining room and down the hall toward the bedroom. The revolver contained three live and two empty shells. Questioned by the officers whether she had shot her husband defendant gave vague and erratic answers, but she finally replied that she had not shot him and that "This is none of your business. Why don't you leave? This is boring me. . . ." Officer Berger formed the opinion that defendant was only partially intoxicated. Defendant was then taken to the police station where she was interrogated

further at which time she denied any knowledge of the shooting of her husband, the circumstances under which he was found or the presence of the gun. Officer James Close then proceeded to question defendant from 1 a.m. to about 4 a.m. during which time defendant steadfastly reiterated her lack of knowledge of the shooting. In the several interviews defendant displayed an indifferent and callous attitude, remarking that she asked for excitement and got more than she asked for, that it was fun and that she didn't see what the fuss was about as Bell was not hurt bad anyway. On the morning of May 19th, Officer Close, in an effort to gain information, untruthfully told defendant that Mr. Bell had informed him that she had shot him, whereupon defendant stated that she had gone into the front room with the gun and sat on the couch next to her husband, that he attempted to grasp her hand or wrist and that the gun went off and he had been shot.

Officers Berger and Turner returned to the premises to search for a second bullet. An intensive examination failed to disclose any evidence that a second shot had been fired in the living room. The officers found a bullet hole in the north wall of the bedroom about 2½ feet above the floor; a bullet was found outside the wall about 6 feet therefrom; at the bullet hole in the wall was freshly exposed plaster. The course of the bullet through the wall projected inward indicated that it had passed at a height of 7 or 8 inches above the bed. Testimony at the trial revealed that this bullet and the one recovered in the front room were fired from the revolver found on the premises. The shot which caused death entered the left side of the abdomen, ranged downward and shattered the right hip bone. Powder burns showed that the gun was held about 8 inches away from the victim. There were no identifiable fingerprints found on the revolver.

Defendant testified that she and her husband had been drinking steadily for several days with little or no food; she had fallen asleep on the bed, upon awakening was in a gay and frivolous mood, was unable to find a bottle of gin from which they had been drinking and decided to confront her husband with the gun and inquire where he had hidden it; she did not know where she got the gun but had it in her hand with her finger on the trigger, walked into the living room where Mr. Bell was lying on the couch, sat down on the couch and when he saw the gun in her hand, he allowed her no explanation but jumped to his feet, grabbed her hand, forcing it to the left; the gun fired; she remembered only one

shot; the next thing she remembered was his asking for the telephone to call for help; she put the telephone on the coffee table and remembered nothing thereafter until she opened the door to the officer. She did not recall any conversation with Officer Berger at her home on May 17th or anything else that happened at the house and knew nothing about a second bullet having been fired; she had no intention of shooting her husband so as to wound or kill him. She also testified that she did not know the gun carried live ammunition; that her husband had told her it was always loaded with blanks but that she knew that it was fired by pulling the trigger. A sister of defendant and a woman friend testified that a week after the shooting they obtained a house key from the police, looked through the house and found five blank cartridges of the same caliber as the gun.

Two women neighbors testified that they heard two shots spaced from two to three minutes apart. A diagram of the plan of the house showed a solid wall between the living room and the bedroom.

The foregoing is an abbreviated statement of the evidence. Our discussion will be confined to certain irrefutable facts which clearly lead to the conclusion that Mrs. Bell was guilty of murder of the second degree.

The contentions that there was insufficient evidence to prove the commission of any offense and that at most the killing was manslaughter will be considered together.

It is argued first that the People made use of the admission of appellant of her action which resulted in the shooting and were, therefore, bound by her explanation that it was accidental. Upon this point appellant cites *People v. Salaz*, 66 Cal.App. 173 [225 P. 777] and *People v. Toledo*, 85 Cal. App.2d 577 [193 P.2d 953]. Neither case furnishes support for appellant's contention. If the evidence of the People convinced the jury that the shooting occurred in a manner other than that described by appellant, her testimony could properly have been rejected as false and the contradictory evidence accepted as controlling. The opinion in *Salaz* so holds.

There was ample evidence to prove that the shooting was not accidental. The credibility of appellant was impeached by her statements to the officers in which she denied all participation in the shooting and pretended to believe that her husband had shot himself. But in addition to that, it was proved beyond doubt that the gun was not fired twice in a

struggle for its possession but that one shot was fired in the living room and another in the bedroom. A careful search was made for evidence that two shots were fired in the living room and none was found. Both shots were fired from the same gun. The time interval between the shots was sufficient to permit the holder of the gun to go from one room to the other before firing the second shot. The hole in the bedroom wall was caused by a shot fired in that room. A blank wall separated the two rooms. The break in the plaster where the bullet emerged appeared to be a fresh one. The course of the bullet was across the bed and only 7 or 8 inches above it. It was the bullet fired in the living room which killed Mr. Bell. That shot could have been fired while appellant was holding the gun and Mr. Bell was trying to get it away from her. Appellant testified she heard him say: " 'What the devil are you doing?' He reached over and grabbed my hand, and the way in which he did it, it frightened me. I believe I called out his name. I called him. 'Don.' I can't say it positively, but I am quite sure I called out his name. By that time he was on his feet, still holding my hand. I had it in my left hand. He was forcing my hand as far to the left as he could, and when I heard the explosion of the gun he was on his feet.'' Even if this was a true account of the shooting it did not prove that it was entirely accidental as to appellant. Her finger was upon the trigger. She did not release her hold upon the gun but held it almost against the body of Mr. Bell. She evidently resisted his attempt to force it to the side and away from him. But she maintained a grip upon it sufficiently strong to operate its double action.

It may be that one shot was fired during a struggle, but there would have been no occasion for a struggle if appellant had merely intended to exhibit the gun in a spirit of fun. She did not need to point the gun at the deceased while her finger was upon the trigger. She could have let go of it and permitted it to be taken from her. If she had not resisted the efforts of the deceased he could easily have pushed the gun aside. From these facts alone the jury could have reached the conclusion that appellant intentionally pulled the trigger and that even that shot was not fired accidentally. But what of the shot in the bedroom? Appellant testified that she had no knowledge of the hole in the bedroom wall. But it was fired from the same gun and at the same time as the other one. It could only have been fired by appellant. Did she

fire one shot in the bedroom to make sure that the gun was loaded, and with live ammunition, or did she fire one shot in the living room and then follow the deceased into the bedroom and fire a second shot at him to finish him off as he lay upon the bed, bleeding freely? Appellant had no answers for these questions. She did not remember that the deceased went into the bedroom and yet, according to the testimony of Officer Rushton, she and her husband were conversing in the bedroom when he arrived; she did not know of the bullet hole in the bedroom wall. Although she was the only one who could have explained how and when the hole was caused she submitted those questions to the jury without any attempt at explanation. The jury could not reasonably have doubted that she did fire that shot, and that she pretended ignorance of the bullet hole because it would have been impossible for her to show that she did not fire the bullet that made the hole. A reasonable conclusion was that this was the second one that was fired, but if so, the act was no less wicked and malicious because the shot missed the mark. And even if that was the first shot, it could have been inferred that defendant fired it to make sure the gun was loaded with live ammunition, and having ascertained that fact, she then went into the living room holding her finger on the trigger. The jury made no mistake in convicting appellant of murder of the second degree. (*People* v. *Frost,* 37 Cal.App. 120 [174 P. 106] ; *People* v. *Ogg,* 159 Cal.App.2d 38 [323 P.2d 117].)

The second point is that the court of its own motion should have given an instruction on the principle that if the evidence is susceptible of two reasonable interpretations, one pointing to the innocence of the defendant and the other pointing to guilt, the former interpretation is to be adopted. It would have been a proper instruction to give if the principle had not been sufficiently stated in other instructions. It is not made to appear by appellant's briefs that the principle was not adequately covered by instructions that were given, as required by rule 33(b), Rules on Appeal. But, however that may be, we think the instruction would have been of no avail to appellant. The fact that she gave false testimony as to the circumstances of the shooting was demonstrated by the other evidence. There was no reasonable interpretation of the evidence under which the jury could have found that the shooting of Mr. Bell was purely accidental or was only manslaughter. From the fact that appellant fired two shots the jury

could reasonably have concluded that it was her purpose to kill her husband.

The third point is that it was error to instruct in the law of murder. The point is obviously without merit.

The judgment and order are affirmed.

Wood (Parker), J., and Vallée, J., concurred.