[Crim. No. 5815.   First Dist., Div. Two.   June 8, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. GERALDINE
ALFREDS, Defendant and Appellant.

Bruce B. Bruchler, under appointment by the District Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Robert R. Granucci and Horace Wheatley, Deputy Attorneys General, for Plaintiff and Respondent.

TAYLOR, J.—In a previous opinion, this court reversed defendant's conviction of voluntary manslaughter in the killing of her husband on the ground that an instruction on involuntary manslaughter should have been given, *sua sponte.* The Attorney General in his petition for hearing has cited *People* v. *Phillips,* 64 Cal.2d 574 [51 Cal.Rptr. 225, 414 P.2d 353], and contends that defense counsel invited error by affirmatively requesting the trial court, for tactical reasons, to refuse the district attorney's proffered instruction on involuntary manslaughter. This argument was not made nor was the *Phillips* case cited on the appeal, the Attorney General having relied on defendant's mere failure to request the involuntary manslaughter instruction. Thus, the Supreme Court has now returned the case to us for a reconsideration in view of the Attorney General's additional contention. The appeal was taken from the judgment of conviction and also from the order denying a new trial.[1]

The facts are as follows: defendant, Geraldine Alfreds, and Phillip Alfreds (hereafter Phil) were married in 1958 and had four children. The marriage was marked by turbulence, violence and numerous separations. The parties were separated and defendant's divorce action was pending at the time of the shooting here involved. Several weeks before, Phil had threatened to kill defendant rather than lose her.

About 10 p.m. on April 13, 1965, defendant and her friend, Ted Pierce (hereafter Ted), were watching television in the living room of the Pierce residence located across the street from defendant's home in Middletown, Lake County. Phil knocked on the door and when Ted asked who was there, replied: ''Phil.'' Defendant immediately ran through the bedroom to the bathroom of the Pierce residence. Ted opened the door and asked Phil what he wanted. Phil replied: ''I want my old lady,'' and entered the house, grabbed Ted by the shirt, saying: ''I'm going to kill you, Ted.'' Phil pushed Ted down onto the floor, then jumped over him and went into the bedroom. Phil and defendant frantically screamed at each other and scuffled over Ted's unloaded pistol which defendant had picked up from the dresser. Meanwhile, Ted got up from the floor, grabbed a shotgun, ran out into the front yard and faced the front door, holding the gun at port arms position. Both Ted and defendant testified to great fear.

---

[1] The order denying the motion for a new trial is not appealable and the purported appeal therefrom must be dismissed (Pen. Code, § 1237).

Ted testified that defendant ran out of the house, followed by Phil, and that defendant came along the left side of Ted, grabbed the shotgun out of his hands, saying: "Shoot. Shoot the son-of-a-bitch or I will." Ted ran a few steps to the car which was parked in front of his house and seconds later heard a blast from the shotgun. When he returned, he saw Phil lying on the ground and defendant crying and saying: "Oh, my God, I shot him." Despite efforts to save him, Phil bled to death from the shotgun wounds.

Immediately after the shooting, defendant told a deputy sheriff that she grabbed the shotgun from Ted and pulled the trigger as Phil started toward her. While confined in the Lake County jail, defendant told another inmate, Lucille McCloud, that she shot Phil and would do it over again.

In another statement and *in her testimony at the trial,* defendant indicated that her earlier statement that she grabbed the shotgun from Ted was wrong and made only to exculpate Ted. Her testimony was that Ted flipped her the gun and it went off either when it hit her hand or as she caught it when Phil was bearing down very closely upon her. When asked if she had pulled the trigger, she indicated she might have but could not remember. She admitted several times that she saw no gun in Phil's hands as he approached her.

Defendant first contends that the court erred in failing to give an instruction on involuntary manslaughter on its own motion (CALJIC 308B). The general principles here applicable are laid down in *People* v. *Carmen,* 36 Cal.2d 768, 773 [228 P.2d 281]. ■ A defendant in a criminal case is entitled to instructions on his theory of the case as disclosed by the evidence, no matter how weak. It is elementary that the court should instruct the jury upon every material question upon which there is any evidence deserving of any consideration whatever. ■ It is the duty of the court to instruct the jury in regard to any included offense that the evidence tends to prove. Where there is any evidence from which a reasonable inference may be drawn that the crime of which defendant was convicted was of a lesser degree, it is prejudicial error to withdraw from the jury the consideration of such evidence (*People* v. *Miller,* 57 Cal.2d 821, 829-830 [22 Cal. Rptr. 465, 372 P.2d 297]).

■ "Manslaughter is the unlawful killing of a human being without malice." One kind of manslaughter, the definition of which is pertinent in this case, is involuntary manslaughter, being that which is done in the commission of an

unlawful act not amounting to a felony, or in the commission of a lawful act which might produce death, in an unlawful manner, or without due caution and circumspection (Pen. Code, § 192, subd. 2).

■ The evidence here would support a finding that in grabbing or catching the shotgun and pointing it in the direction of the deceased, defendant was either performing an unlawful act not amounting to a felony or a lawful act which might produce death in an unlawful manner, or without due caution or circumspection. Furthermore, the testimony of defendant's hysterical condition, that the gun went off when it hit her hand, and that she was unable to say whether she had pulled the trigger, would support a finding that the gun fired accidentally. Such findings, if made by the jury, would clearly justify a verdict of involuntary manslaughter. Thus, the court erred in failing to give an instruction on involuntary manslaughter along with its instructions on murder, voluntary manslaughter, and justifiable homicide (*People* v. *Carmen, supra*; *People* v. *McCartney,* 222 Cal.App.2d 461, 476 [35 Cal.Rptr. 256]). ■ While it is true that defendant here made no specific request for the omitted instruction, as in *Carmen* and *McCartney,* she did make a request for an instruction on lesser included offenses and such a general request has been held sufficient to invoke the rule of the *Carmen* case (*People* v. *Lewis,* 186 Cal.App.2d 585 [9 Cal.Rptr. 263]).

■ We think an involuntary manslaughter instruction would be called for by defendant's testimony, even in the absence of a request for an instruction on lesser included offenses. While the trial court need not instruct on specific points developed by the evidence unless requested, instructions must be given, *sua sponte,* in criminal cases on the "general principles of law governing the case" (*People* v. *Wade,* 53 Cal.2d 322, 334 [1 Cal.Rptr. 683, 348 P.2d 116]). The ends of justice can best be served by providing defendants this judicial safeguard from the possible vagaries or ineptness of counsel under the adversary system. Thus, it has been held error in murder prosecutions to fail to give an unrequested instruction on manslaughter where the facts of the case would warrant a verdict of guilt to such offense (*People* v. *Wade, supra*; *People* v. *Manzo,* 9 Cal.2d 594, 598-599 [72 P.2d 119]; *People* v. *Best,* 13 Cal.App.2d 606, 610 [57 P.2d 168]). The fact that the accused may claim self-defense, which implies an intentional killing, does not obviate the requirement (*People* v. *Lewis, supra,* at p. 599; *People* v. *Wright,* 167 Cal. 1, 4 [138 P. 349]; Pen. Code, § 1127).

■ Furthermore, although voluntary and involuntary manslaughter carry identical penalties upon conviction (*People* v. *Doyle,* 162 Cal.App.2d 158 [328 P.2d 7]), there is an important distinguishing factor. A conviction of voluntary manslaughter makes defendant ineligible for probation, except in unusual cases, as she is a person who "use[d] a deadly weapon upon a human being in connection with the perpetration of the crime" (Pen. Code, § 1203). Thus, we hold that the court's failure to instruct on involuntary manslaughter, *sua sponte,* was prejudicial error and would require reversal unless deliberately invited by the defense.

In reconsidering this case and reviewing the record in the light of *People* v. *Phillips, supra,* we see no other alternative than to hold that the court's error in failing to instruct on involuntary manslaughter was invited by defendant's counsel. The trial judge in his order denying defendant's motion for a new trial recollected that defense counsel affirmatively requested that the district attorney's proffered instruction on involuntary manslaughter be refused for the reason that the defense was relying on justifiable homicide.[2] Defendant's counsel has not specifically denied the court's recollection in his answer to the petition for hearing and, in fact, indicated agreement therewith in his memorandum supporting the motion for a new trial.[3]

As the Supreme Court stated in *Phillips* : "The record reveals . . . that defendant's counsel strongly opposed the manslaughter instruction and indicated to the trial court that

---

[2] "When the discussion reached the point of determining the included offenses, the Court mentioned not only murder in the first degree, murder in the second degree, and voluntary manslaughter, but also involuntary manslaughter, and asked counsel to comment with respect thereto. The district attorney requested the Court to instruct that involuntary manslaughter was an included offense, but defense counsel argued that the instruction should not be given in that form, that the defense was based on justifiable homicide.

"A general discussion and review of the evidence followed and the Court announced that it did not believe that there was any evidence that would support a verdict of involuntary manslaughter. Defense counsel agreed, or at least retained his position that the Court should not give any instructions on involuntary manslaughter."

[3] "It was the definite expressed opinion of the Court that adding involuntary manslaughter as one of the included offenses would only tend to confuse the jury, and this counsel, through ineptness, agreed upon the expressed theory that if the jury, on the facts presented here, did not have a reasonable doubt as to whether defendant acted in self-defense, under circumstances which made such act reasonable, then there was no hope they would accept proof of an accidental or negligent killing. This analysis by this counsel was inept, and not in accordance with the law or in the interest of the defendant."

he considered it 'tactically' to defendant's advantage to confront the jury with the limited choice between murder and acquittal. Thus the failure of the trial court to instruct on manslaughter, though erroneous, was invited error; defendant may not properly complain of such error on appeal. [Citations.]'' (P. 581, fn. 4.)

There is no merit in defendant's contention that the evidence was insufficient to support a judgment of voluntary manslaughter.[4] The jury was not bound to accept defendant's version of the facts (*People* v. *Bell*, 171 Cal.App.2d 834, 837 [341 P.2d 829]) and she concedes in her closing brief that there was testimony indicating an intentional killing.[5]

Defendant's reliance on *People* v. *Mercer*, 210 Cal.App.2d 153 [26 Cal.Rptr. 502], and *People* v. *Collins*, 189 Cal.App.2d 575 [11 Cal.Rptr. 504], is inappropriate. In those cases, the prosecution's own testimony established justifiable homicide as a matter of law. Such was not the situation here. There was testimony that defendant did not see any gun in the deceased's hands as he approached her and that she was standing by her friend Ted, who was armed with a shotgun. It was for the jury to determine, under all the circumstances, whether defendant was justifiably apprehensive of great bodily injury or death at the time of the shooting (*People* v. *Furber*, 233 Cal.App.2d 678, 685 [43 Cal.Rptr. 771]; *People* v. *McAuliffe*, 154 Cal.App.2d 332 [316 P.2d 381]).

The judgment is affirmed and the order denying the motion for a new trial is dismissed.

Agee, Acting P. J., and Bray, J.,* concurred.

A petition for a rehearing was denied July 7, 1967, and appellant's petition for a hearing by the Supreme Court was denied September 6, 1967.

---

[4]Voluntary manslaughter is a wilful act, characterized by the presence of an intent to kill *engendered by sufficient provocation* and by the absence of premeditation, deliberation and (by presumption of law) malice aforethought (*People* v. *Brubaker*, 53 Cal.2d 37, 44 [346 P.2d 8]). Penal Code section 192, subdivision 1, defines voluntary manslaughter as the unlawful killing of a human being, without malice, ''upon a sudden quarrel or heat of passion.''

[5]The following evidence of an intentional killing would clearly justify the voluntary manslaughter conviction: defendant's statements to Ted ''Shoot the son-of-a-bitch or I will'' and ''Oh, my God, I shot him''; defendant's statement to Lucille McCloud ''I shot Phil and would do it again if I had to do it over''; and her admission that she might have pulled the trigger.

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.