[Crim. No. 6376.   First Dist., Div. Three.   May 1, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. GEORGE KELLY,* Defendant and Appellant.

Lois Prentice, under appointment by the Court of Appeal, for Defendant and Appellant.

*Defendant is also known as Lester Heitzmann.

Thomas C. Lynch, Attorney General, Robert R. Granucci, Lawrence R. Mansir and Clifford K. Thompson, Deputy Attorneys General, for Plaintiff and Respondent.

SALSMAN, J.—Appellant was charged with violation of Penal Code section 4530 (escape from a prison camp). He was found guilty by a jury. ■ On appeal he questions certain instructions given to the jury, challenges the sufficiency of the evidence to show intent to escape, and claims error in the trial court's admission of his prior felony convictions to impeach his testimony when he became a witness in his own behalf. We have examined the record and considered each of these contentions, but find no error. Accordingly, we affirm the judgment.

Appellant was previously convicted of second degree robbery and sentenced to prison. Later he was convicted of escape from prison and was returned to confinement. At the time of the events with which we are here concerned he was held in Conservation Camp #73 in Tulare County. The camp is a fire-fighting facility located on about one acre of ground. There are no fences surrounding the camp, but signs mark the camp limits, and inmates are not permitted beyond such limits, except by permission, or to carry out their fire-fighting duties.

Appellant's alleged escape took place on the night of May 16, 1965. Joseph Duffy, an officer in the camp, testified that at about 9:20 p.m. appellant came to him for treatment of an upset stomach, and was given medicine. About 10 minutes later Duffy made a check of the camp's inmates. Appellant was missing. Duffy toured the perimeter of the camp shouting appellant's name, but could not locate him. Later, one of the fire-fighting crews returned to the camp but appellant was not among these men. Duffy did not see appellant until more than six months later. Prison records in evidence showed that appellant was at Conservation Camp #73 on May 16, 1965, but missing from that date until November 22, 1965.

An employee of the Monterey County sheriff's office testified that on November 22, 1965 he went to Reno, Nevada to pick up appellant, who was then in custody of a Nevada sheriff, and that he returned with his prisoner to Monterey County.

Appellant testified that on the night of May 16, 1965 he became ill and went to an officer of the camp for medicine. He said he was then called out on a fire but later returned. After

his return he remembered that two fifths of whisky which were brought in by a visitor had been concealed on the premises. He found one of the bottles of whisky, and sat down and drank most of it. He said the whisky affected him greatly because he had not had a drink in ten years. Then he began walking. He testified he did not know which way he went when he left the camp, but that when he "came to" the following evening at about 6 o'clock he was near the City of Visalia, far from camp, but did not know how he got there. He claimed that he was inside the camp limits when he drank the whisky, that he didn't remember leaving, and that he had no intention of leaving when he began drinking. He did not return to camp, however, but continued on until he reached the City of Reno where he was apprehended about six months later.

The trial judge instructed the jury as follows:

"California Penal Code Section 4530 provides that every person confined in a State prison forestry camp under the custody of prison officials, officers and employees who escapes or attempts to escape therefrom is guilty of a felony.

"An escape is defined as an unlawful departure from the limits of custody."

"In every crime or public offense there must exist a union or joint operation of act and intent."

"Guilt of the crime of escape requires the intent to exceed the limits of the lawfully prescribed custody."

"You are instructed that a prison camp inmate remains a prisoner and under the custody of the prison camp guards at all times and that if he leaves the limits of his lawful custody and forms the general intent to escape, whether such intent was formed before, at the time of or after he exceeds the limits of his lawful custody, he is guilty of escape."

Appellant's strongest objections focus on the final instruction quoted above. He argues that this instruction took from the jury the question of what the limits of his custody were, and permitted the jury to find him guilty if at any time, whether before or after crossing the camp's boundary, he formed a general intent to escape. We see no error in the instruction.

Appellant interprets the phrase ". . . limits of his lawful custody . . ." as used in the instruction, to mean the geographical boundaries of the Conservation Camp, and argues that, to be guilty of escape he must have entertained a general intent to escape at the moment he crossed the boundary line.

The Attorney General, on the other hand, contends that appellant could properly be found guilty of escape if he formed a general intent to escape before or after leaving the limits of the camp. The question presented is not a new one. Prior decisions of the Court of Appeal have settled the law contrary to appellant's contention. Thus, in *People* v. *Crider*, 76 Cal.App. 101 [244 P. 113], the defendant was at work outside the prison walls. By permission, he started back to the prison for medical treatment. Enroute he "changed his mind" and escaped. In *Crider*, the defendant argued, as appellant does here, that he had no intent to escape when he left the prison camp and hence there was no proof of an essential element of the crime. His contention was rejected. The court said (at page 104) : "Some mention is also made by the defendant that there is evidence to the effect that when he departed from said prison camp his intention was to return to the prison to obtain medical treatment, but that on the way back to the prison he changed his mind and made his escape, and he claims, therefore, it was not proved that he escaped from the prison camp. We think it would make no difference when he conceived the intent to escape, because, in contemplation of law, he was at all times a prisoner and under the surveillance of the prison guards."

In *People* v. *Hadley*, 88 Cal.App.2d 734 [199 P.2d 382], the defendant was outside camp boundaries by permission and decided to escape. The court correctly instructed the jury that " '. . . it is immaterial as to what day or night the defendant conceived such intention to escape provided that such intention to escape was formed at a time prior to the expiration of defendant's term of imprisonment.' " (P. 737.)

In *People* v. *Miller*, 196 Cal.App.2d 171, 175-176 [16 Cal. Rptr. 408], the court squarely held that formation of an intent not to return after leaving the camp boundaries is no defense to an escape charge. And in *People* v. *Wester*, 237 Cal.App.2d 232, 237-238 [46 Cal.Rptr. 699], the court viewed the escape statute as imposing upon the escapee a duty to return as soon as it becomes reasonably possible to do so.

We must remember also that the jury was not bound to believe appellant's uncorroborated explanation of his departure from the camp. They might well have believed that he was not thoroughly intoxicated when he crossed the camp's boundary and that he fully intended to escape. But, as the cited cases make clear, it is immaterial whether or not he enter-

tained a general intent to escape at the time he left. The intention to escape need not coincide with the actual crossing of the boundary line. Where, as here, there is a conscious failure to return to custody, a general intent to escape may be found, and a jury may properly convict.

■ Appellant argues that the trial court erred in permitting the prosecution to introduce evidence of his five prior felony convictions to impeach his credibility as a witness. He contends that, since two convictions had been established to show that he was lawfully committed at the time of the alleged escape, it was an abuse of discretion to admit evidence of other felony convictions. We see no error.

Appellant's testimony was intended to establish that he crossed the camp's boundary unknowingly, and without any intention of escaping from custody. The truthfulness of this testimony was in issue. It was the right of the prosecution to attack appellant's credibility as a witness, and for that purpose to show his prior felony convictions.

Evidence Code section 788 permits the impeachment of a witness in this manner. It reads: "For the purpose of attacking the credibility of a witness, it may be shown by the examination of the witness or by the record of the judgment that he has been convicted of a felony. . . ."

Appellant argues, however, that the language of section 788 is permissive; that the trial court was not required to admit his prior felony convictions in evidence; and that it abused its discretion in permitting these facts to be shown. He cites two cases decided by the Court of Appeals for the District of Columbia, *Gordon* v. *United States,* 383 F.2d 936 and *Luck* v. *United States,* 348 F.2d 763 [121 App.D.C. 151]. The cited cases do lend support to appellant's argument. Indeed, *Gordon* suggests specific guidelines for federal district courts of the District of Columbia to follow in exercising discretion on whether to allow evidence of prior felony convictions for purposes of impeachment. (P. 940.) But these cases do not express our rule.

When our Evidence Code was in process of enactment, the California Law Revision Commission proposed limiting impeachment to proof of a crime in which "an essential element" is "dishonesty or false statement." (See Cal. Law Revision Com., Recommendation proposing an Evid. Code, § 788, based on Code Civ. Proc. § 2051; see also Witkin, Cal. Evidence (1958) § 1243, pp. 1145-1146.) But the commission's recommendations did not meet with legislative approval, and

section 788 as enacted simply restates the rule expressed by former Code of Civil Procedure section 2051, under which any felony conviction is admissible to impeach the defendant's credibility if he takes the stand. (*People* v. *Stewart*, 240 Cal. App.2d 1, 7 [50 Cal.Rptr. 26].) There is no dispute but that all convictions shown were of felonies. Under our long established rule, each conviction could be used by the prosecution to impeach appellant's testimony. Thus the trial court did not err or abuse its discretion in receiving this evidence.

The judgment is affirmed.

Draper, P. J., and Brown (H. C.), J., concurred.