[Crim. No. 17842. Second Dist., Div. Five. Nov. 6, 1970.]

THE PEOPLE, Plaintiff and Respondent, v.
HENRY HOUSE, Defendant and Appellant.

[Crim. No. 18093. Second Dist., Div. Five. Nov. 6, 1970.]

In re HENRY HOUSE on Habeas Corpus.

(Two Cases.)

## COUNSEL

Paul T. Locke, under appointment by the Court of Appeal, for Defendant, Appellant and Petitioner.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Howard J. Schwab, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**AISO, J.**—Defendant in superior court No. A056766 was found guilty by a jury of voluntary manslaughter (after being charged with murder in count I and assault with a deadly weapon in count II). He admitted three prior felonies and was sentenced to state prison with the sentence on count II ordered to run concurrently with the sentence on count I. He appeals from the judgment.

Prior to the occurrence of the events charged in A056766, defendant had been found guilty of assault with a deadly weapon in superior court No. A227715. Probation had been granted and no appeal had been taken from the appealable order granting probation (Pen. Code, § 1237). After sentence with appropriate reservations in A056766, but before determination of whether the sentence on the two counts would be consecutive or concurrent, a different judge presiding in a different department revoked probation in A227715 and sentenced defendant to state prison with sentence to run consecutive to any other sentence being served. Thereafter the previous sentence in A056766 ordering sentences on the two counts to run concurrent to each other was ordered to stand. Defendant appeals from this judgment.

In addition defendant has filed a petition for habeas corpus in the Supreme Court (Crim. No. 14502) which was transferred to this court "for

consideration in connection with the pending appeal." The points raised in the petition all deal with errors alleged to have occurred at the trial in A056766; therefore, the petition will be treated as a supplemental brief in that action.

## I.

Since some points in defendant's petition may be construed as an attack on the sufficiency of the evidence, a short review is required.

As to count I, defendant admitted firing the fatal shot at the victim, Jack DeVane. The testimony of James Moyers, the victim in count II, was as follows: He and DeVane had been drinking on the Sunset Strip in the early morning hours and left the bar shortly before two in the morning. As they were walking along Sunset somebody yelled "Hey you." They turned around and defendant was standing there with a shotgun pointed at Moyers. Defendant asked if they were Death Riders (a motorcycle club) and when they replied "yes" he said "My name is House. I hear you are looking for me in connection with Pamela." Moyers and DeVane turned and started walking toward defendant. DeVane said something to defendant and defendant looked at him and shot him. After DeVane was shot, Moyers tried to tackle defendant, but was himself tackled by defendant's companion before he could reach defendant. While Moyers and defendant's companion were struggling, defendant hit Moyers with the barrel of the shotgun. Defendant and his companion then left. Both Moyers and DeVane had chains although only DeVane's was heavy enough to be used as a weapon. DeVane's remained over his shoulder and under his jacket where it was found by the investigating officer.

Defendant's testimony was the same except that he claimed the two victims approached him and his companion with their chains out and "cocked"; that he intended only to scare the two victims with the shotgun, and shot the victim because he feared his life was in danger. However, when defendant was arrested after a hot pursuit from the scene of the killing, he spontaneously told a deputy sheriff patting him down for weapons, "I had to do it. The job had to be done. I had to do it. I just got back from Tijuana, the guy has been bugging me for a long time. I had to do it."[1]

Defendant discharged the shotgun from a distance of only 2 to 4 feet, or at most 5 feet, according to the testimony of two other witnesses. According to Moyers, the shot caused a large hole in DeVane's chest.

The verdicts were amply supported by the evidence. (Manslaughter:

---

[1]No *Miranda* problem is involved.

*People* v. *Alfreds* (1967) 251 Cal.App.2d 666, 672 [59 Cal.Rptr. 647]; *People* v. *Jackson* (1962) 202 Cal.App.2d 179, 183 [20 Cal.Rptr. 592]; *People* v. *Doyle* (1958) 162 Cal.App.2d 158, 160 [328 P.2d 7]; *People* v. *Toliver* (1949) 90 Cal.App.2d 58, 60-61 [202 P.2d 301]. Assault with deadly weapon: *People* v. *Herrera* (1970) 6 Cal.App.3d 846, 851 [86 Cal.Rptr. 165]; *People* v. *Thompson* (1949) 93 Cal.App.2d 780 [209 P.2d 819]; cf. *People* v. *McCoy* (1944) 25 Cal.2d 177, 189 [153 P.2d 315].)

## II.

 The main claim on appeal is that evidence of prior convictions should not have been presented to the jury. The priors were: (1) murder without malice (Texas, 1950); (2) assault with a deadly weapon (Los Angeles County, 1957); (3) assault with a deadly weapon (Los Angeles County, 1968). Defendant admitted these prior convictions before trial after his counsel had examined the records and found that there had been adequate representation by counsel in each of these cases. They were admitted into evidence as impeachment when defendant testified. Defendant's argument may be summarized as follows: Although under section 788 of the Evidence Code[2] a prior felony conviction may be used for impeachment, Evidence Code section 352[3] also applies and it must be shown that the probative value of the impeaching evidence does not outweigh its prejudicial value. The issue was fully argued before the trial judge who stated that he felt the cases precluded an exercise of discretion as provided by section 352 with regard to evidence of prior felony convictions. This conclusion was correct. The precise issue raised here was decided in this district adversely to defendant in *People* v. *Romero* (1969) 272 Cal.App.2d 39, 45-46 [77 Cal.Rptr. 175], hearing denied; followed in *People* v. *Sneed* (1970) 8 Cal.App.3d 963, 966 [88 Cal.Rptr. 32]. (Cf. *Grudt* v. *City of Los Angeles* (1970) 2 Cal.3d 575, 590-591 [86 Cal.Rptr. 465, 468 P.2d 825].)

The court in *People* v. *Kelly* (1968) 261 Cal.App.2d 708, 712 [68 Cal. Rptr. 337], explained why such cases as *Gordon* v. *United States* (1967) 383 F.2d 936 [127 App. D.C. 343], cert. denied 390 U.S. 1029 [20 L.Ed.2d 287, 88 S.Ct. 1421], and *Luck* v. *United States* (1965) 348 F.2d 763 [121 App. D.C. 151], cited by defendant are not controlling in Cali-

---

[2]Evidence Code section 788 reads in pertinent part: "For the purpose of attacking the credibility of a witness, it may be shown by the examination of the witness or by the record of the judgment that he has been convicted of a felony. . . ."

[3]Evidence Code section 352 reads in pertinent part: "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will . . . (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

fornia. It also explained: "When our Evidence Code was in process of enactment, the California Law Revision Commission proposed limiting impeachment to proof of a crime in which 'an essential element' is 'dishonesty or false statement.' [Citations.] But the commission's recommendations did not meet with legislative approval, and section 788 as enacted simply restates the rule expressed by former Code of Civil Procedure section 2051, under which any felony conviction is admissible to impeach the defendant's credibility if he takes the stand."

### III.

 Defendant further attacks the validity of Evidence Code section 788 on constitutional grounds, which is left unanswered in the Attorney General's brief. The first facet of this constitutional attack is that the section permits the introduction of non-relevant matters not probative of whether the truth is being spoken and highly prejudicial, thus violating fundamental standards of fair trial. The second facet is that a rule permitting the introduction of prior felony convictions on the issue of credibility places too great a penalty upon his right to testify in his own behalf, citing *Griffin* v. *California* (1965) 380 U.S. 609 [14 L.Ed.2d 106, 85 S.Ct. 1229] in support.

At issue in *Spencer* v. *Texas* (1967) 385 U.S. 554 [17 L.Ed.2d 606, 87 S.Ct. 648] was the question whether a state procedure permitting the introduction of evidence of prior felony convictions for purposes of enhancing punishment under a recidivist penal provision, at the same time as the trial on the issue of guilt or innocence on a current charge, violated fundamental fairness under the Fourteenth Amendment. In holding no violation, the court stated on pp. 563-564 [17 L.Ed.2d at p. 614]: "Cases in this Court have long proceeded on the premise that the Due Process Clause guarantees the fundamental elements of fairness in a criminal trial. See, e.g., *Tumey* v. *Ohio,* 273 U.S. 510 . . . ; *Betts* v. *Brady,* 316 U.S. 455 . . . ; cf. *Gideon* v. *Wainwright,* 372 U.S. 335 . . . ; see *Estes* v. *Texas,* 381 U.S. 532 . . . ; *Sheppard* v. *Maxwell,* 384 U.S. 333 . . . ; cf. *Griffin* v. *Illinois,* 351 U.S. 12. . . . But it has never been thought that such cases establish this Court as a rule-making organ for the promulgation of state rules of criminal procedure. And none of the specific provisions of the Constitution ordains this Court with such authority. In the face of the legitimate state purpose and the long-standing and widespread use that attend the procedure under attack here, we find it impossible to say that because of the possibility of some collateral prejudice the . . . procedure is rendered unconstitutional under the Due Process Clause. . . ." Distinguishing *Jackson* v. *Denno* (1964) 378 U.S. 368 [12 L.Ed.2d 908, 84 S.Ct. 1774, 1 A.L.R.3d 1205] the court continued (385 U.S. at p. 565

[17 L.Ed.2d at p. 615]): "It would be extravagant in the extreme to take *Jackson* as evincing a general distrust on the part of this Court of the ability of juries to approach their task responsibly and to sort out discrete issues given to them under proper instructions by the judge in a criminal case, or as standing for the proposition that limitating instructions can never . . . limit evidence to its rightful purpose." Citing Kalven & Zeisel, The American Jury (1966) in footnote 8, page 565 [17 L.Ed.2d at p. 615] the court stated: "Indeed the most recent scholarly study of jury behavior does not sustain the premise that juries are especially prone to prejudice when prior-crime evidence is admitted as to credibility."

In the instant case, the court instructed the jury in the language of what is now CALJIC (3d revised ed.) No. 2.23: "The fact that a witness had been convicted of a felony, if such be a fact, may be considered by you only for the purpose of determining the credibility of that witness. The fact of such a conviction does not necessarily destroy or impair the witness' credibility. It is one of the circumstances that you may take into consideration in weighing the testimony of such a witness." This instruction adequately protected defendant's rights. (Cf. *People* v. *Smith* (1966) 63 Cal.2d 779, 791 [48 Cal.Rptr. 382, 409 P.2d 222].)

The contention that the introduction of prior felony convictions unduly penalizes the defendant in testifying as a witness on his own behalf was considered in *People* v. *Modesto* (1965) 62 Cal.2d 436, 454 [42 Cal.Rptr. 417, 398 P.2d 753]. The court there stated: "The defendant must weigh the danger of impeachment by the introduction of prior convictions for every witness he calls for the defense. 'The fact that the witness may also be the defendant makes the choice more difficult but a denial of due process does not emerge from the circumstances.' (*Adamson* v. *California*, 332 U.S. 46, 57-58 [91 L.Ed. 1903, 1912, 67 S.Ct. 1672, 171 A.L.R. 1223]." (Accord: *People* v. *Roberts* (1966) 65 Cal.2d 514, 522 [55 Cal.Rptr. 412, 421 P.2d 420].) This portion of the *Modesto* holding was not rejected in *Griffin* v. *California* (1965) *supra*, 380 U.S. 609, 615 [14 L.Ed.2d 106, 110, 85 S.Ct. 1229, 1233], where the court appears to tacitly assume that the deterrent effect upon defendant's testifying where evidence of prior convictions may be adduced violates neither due process nor the right of defendant to call witnesses on his own behalf under the Sixth Amendment.

We, therefore, hold that the use of prior felony convictions for the purposes of impeachment with an instruction that the evidence is to be considered only for the limited purposes of impeachment meet the requirements of the Sixth and Fourteenth Amendments of the federal Constitution and of section 13, article I, of the state Constitution.

## IV.

■ The appellant bases two claims of error on Penal Code section 1138: "After the jury have retired for deliberation, if there be any disagreement between them as to the testimony, or if they desire to be informed on any point of law arising in the case, they must require the officer to conduct them into court. Upon being brought into court, the information required must be given in the presence of, or after notice to, the prosecuting attorney, and the defendant or his counsel, or after they have been called."

The first incident arose when the jury addressed (to the judge by note) the question: "If we find him guilty of murder in the second degree, will you give a lenient sentence, or if we find him guilty of voluntary manslaughter will you give the maximum sentence?" The judge sent a note back to the jury telling them to look at the instructions (he had instructed them not to be concerned with possible penalty) and that they should not be concerned with this matter. (See Pen. Code, § § 12, 13, 1168, 5077.)

Subsequently the jury asked the judge if he could give them any further definitions of "base anti social motive" as it applied. The judge replied that he couldn't but that he would provide them with a dictionary if they desired.

In neither instance did the court call the jury and attorneys into the courtroom. He did advise counsel later as to what had transpired in their absence. However, no assignment of error or motion for a mistrial was made.

A similar situation was presented in *People* v. *Alcalde* (1944) 24 Cal. 2d 177, 188-189 [148 P.2d 627]. The jury delivered a note to the judge asking, "May we render a decision of life imprisonment *and not eligible for parole?*" The court returned the note with the reply, "No." Although the court stated that this was improper in that all communications between court and jury should be made in open court, the court stated (p. 189): "But in this instance the court could not have responded by any other answer than 'No' or its equivalent, namely, that the jury was to be guided solely by the instructions already given. The answer of the trial judge could properly have been made over the objection of the defendant or his counsel if the ordinary procedure had been followed." Consequently, the "episode may not be deemed to be prejudicial" necessitating a reversal.

The failure of defendant's counsel to object or move for a mistrial upon the court frankly informing him of the court's action might also be construed to be a tacit approval. Approval of the court's action, even though it might have been a technical violation of section 1138 of the Penal Code,

cures any possible error. (*People* v. *Winkelspecht* (1965) 237 Cal.App. 2d 227, 231 [46 Cal.Rptr. 697].)[4]

■ Violations of section 1138 Penal Code do not warrant a reversal of a judgment of conviction unless prejudice is shown. (*People* v. *Woods* (1950) 35 Cal.2d 504, 512 [218 P.2d 981]; *People* v. *Aguilar* (1963) 217 Cal.App.2d 260, 264 [31 Cal.Rptr. 893]; Cal. Const., art. VI, § 13; Pen. Code, § 1258.) ■ We note that in this case, the jury returned a verdict of voluntary manslaughter rather than one for second degree murder, which is an indicium of lack of prejudice.

## V.

We finally take up several points which defendant in his pro se petition for writ of habeas corpus has raised in addition to those which his appointed counsel has ably and thoroughly presented to the court. We have considered these additional points, but they are readily answered.

1. The record is devoid of any evidence that the factor of racial discrimination played any part in actions of judge, jury, or counsel. (Cf. *People* v. *Rideaux* (1964) 61 Cal.2d 537, 540 [39 Cal.Rptr. 391, 393 P.2d 703].)

■ 2. Defendant contends that his trial counsel failed to impeach witnesses on several occasions. Such action falls within the area of trial tactics within the discretion of the attorney who has the right of controlling the proceedings. (Cf. *People* v. *Williams* (1970) 2 Cal.3d 894, 905 [88 Cal.Rptr. 208, 471 P.2d 1008].) The manner in which a defense counsel conducts the trial of his case is not ground for reversal unless the trial is reduced to a farce and a sham by withdrawing a crucial defense. (*People* v. *Ibarra* (1963) 60 Cal.2d 460, 464 [34 Cal.Rptr. 863, 386 P.2d 487]; *People* v. *Garrison* (1966) 246 Cal.App.2d 343, 356 [54 Cal.Rptr. 731], cert. denied 389 U.S. 915 [19 L.Ed.2d 266, 88 S.Ct. 248].)

■ 3. Defendant asserts that his right of confrontation was violated when he was not personally present during arguments in chambers concerning the admissibility of certain evidence and of the prior felony convictions. ■ First, the privilege and requirement of presence must not be confused with the constitutional "privilege of confrontation which is limited to the stages of the trial when there are witnesses to be questioned." (*Snyder* v. *Massachusetts* (1934) 291 U.S. 97, 107 [78 L.Ed. 674, 679, 54 S.Ct. 330, 333, 90 A.L.R. 575, 580].) Penal Code section 686 does not require otherwise. Even presence is required only "during those por-

---

[4]Disapproved on another point in *People* v. *Chacon* (1968) 69 Cal.2d 765, 774 [73 Cal.Rptr. 10, 447 P.2d 106].

tions of the trial when evidence is taken before the trier of fact." (Pen. Code, §§ 977, 1043.) ■ Bench and chambers conferences held out of the personal presence of a defendant at which issues of law are mooted by his counsel are not a basis of error absent a showing that his absence thwarted a "fair and just hearing." (*People* v. *Teitelbaum* (1958) 163 Cal.App.2d 184, 206, 207-208 [329 P.2d 157] [appeal dismissed, cert. denied 359 U.S. 206 (3 L.Ed.2d 759, 79 S.Ct. 738)].) The contention that a defendant has the " 'right to know what was transpiring or being said during his trial' " was rejected as inapplicable to such conferences in *People* v. *Gillette* (1959) 171 Cal.App.2d 497, 502-503 [341 P.2d 398]. (Cf. *People* v. *Spencer* (1959) 170 Cal.App.2d 145, 149-150 [338 P.2d 484], cert. denied 361 U.S. 949 [4 L.Ed.2d 382, 80 S.Ct. 405].) In any event, the burden of showing prejudice by his personal absence is upon the defendant. (*People* v. *Isby* (1947) 30 Cal.2d 879, 894 [186 P.2d 405]; *People* v. *Gotham* (1960) 185 Cal.App.2d 47, 57 [8 Cal.Rptr. 30]; *People* v. *Spencer, supra.*) ■ This, defendant has failed to do in this case.

■ 4. Defendant contends that his motion for a continuance to obtain a new attorney in place of the public defender made near the end of trial should have been granted. There was no abuse of discretion here where defendant's only claim was the unsupported assertion that his family was coming with a lawyer. (Pen. Code, § 1050; *People* v. *Bonville* (1968) 267 Cal.App.2d 4 [72 Cal.Rptr. 592]; *People* v. *Parks* (1964) 230 Cal. App.2d 805, 810-811 [41 Cal.Rptr. 329]; *People* v. *Lee* (1967) 249 Cal.App.2d 234, 241 [57 Cal.Rptr. 281], cert. denied 389 U.S. 876 [19 L.Ed.2d 163, 88 S.Ct. 173].)

■ 5. Defendant also complains of the judge's act in scratching out that portion of the verdict finding defendant guilty of voluntary manslaughter, which read: "With a recommendation for the maximum penalty under the law." This procedure was agreed to by defendant's trial counsel. There was no error even if defendant's trial counsel had not consented. Except in those instances where the matter of penalty is delegated by statute to the jury, recommendations of the jury with reference to penalty may be disregarded as surplusage without sending the jury back out to correct the verdict. (*People* v. *Gidney* (1937) 10 Cal.2d 138, 145 [73 P.2d 1186]; see Witkin, Cal. Criminal Procedure (1963) § 545, p. 556; Fricke-Alarcon, Cal. Criminal Procedure (7th ed., 1967) pp. 457-458.)

## VI.

■ Since defendant was validly convicted of voluntary manslaughter in A056766, probation was correctly revoked and judgment imposed in

A227715. (*People* v. *Robinson* (1954) 43 Cal.2d 143, 146 [271 P.2d 872].)

## VII.

The judgment in A056766 is affirmed. The judgment in A227715 is affirmed. The writ of habeas corpus is denied.

Stephens, J., concurred.

**KAUS, P. J.**—I concur in all parts of the court's opinion, except with respect to part II, where I concur in the result only. Whether or not we are bound by Court of Appeal decisions in which the Supreme Court has denied a hearing,[1] *People* v. *Romero,* 272 Cal.App.2d 39 [77 Cal.Rptr. 175], was decided by another division of this very court and it would be an intolerable situation for the judges and attorneys trying cases in this district, to be faced with conflicting decisions.

*Romero* holds that prior felony impeachment is not subject to discretionary exclusion under section 352 of the Evidence Code[2] because "[t]he rule in this state is now (§ 788, Evid. Code) and always has been that any felony conviction is admissible to impeach the credibility of defendant if he takes the stand. [Citation omitted.] In substance, section 788, Evidence Code, simply restates the rule expressed by former section 2051, Code of Civil Procedure. . . ." (*People* v. *Romero, supra,* 272 Cal.App.2d at p. 45.)

This rationale disturbs me. What can be said about former section 2051 of the Code of Civil Procedure, seems equally applicable to any other rule of admissibility transplanted from that code to the Evidence Code, such as, for example, the Evidence Code equivalents of the dozen or so former sections of the Code of Civil Procedure stating exceptions to the hearsay rule. (See *People* v. *Spriggs,* 60 Cal.2d 868, 872-873 [36 Cal. Rptr. 841, 389 P.2d 877].)

Before the courts become unalterably committed to the *Romero* rule, I would like to draw attention to certain considerations of public policy which appear to militate against the rule in the situations to which it most directly applies. I would also like to review the genesis of section 352, in order to make the point that the Legislature intended it to apply, without

[1]See cases collected in Witkin, California Procedure (1954) Appeal, section 222 and 1967 Supplement.

[2]Henceforth, unless otherwise noted, all statutory references are to the Evidence Code.

judicially created exceptions, to otherwise admissible evidence of every sort.

My concern based on public policy is quickly stated. The reported cases so far have concerned themselves with witnesses, actual (*People* v. *Sneed,* 8 Cal.App.3d 963, 966 [88 Cal.Rptr. 32]) or potential (*People* v. *Romero, supra*), who were also defendants in the criminal proceedings in which the point came up; however, I can see no possible way to restrict the rule of *Romero* to such witnesses. It applies to all witnesses in all proceedings to which section 788 applies. We deplore the tendency of people to avoid getting involved in other peoples' problems. Every trial lawyer, including prosecutors, has suffered from the reluctance of witnesses to come forward. Even convicted felons may occasionally make a contribution to the search for the truth. A rule to the effect that, come what may, a witness may have his prior felony convictions thrown at him, is counterproductive. I realize, of course, that the number of witnesses who would make themselves available for the sole reason that section 352 qualifies section 788 is small indeed; but such a rule might go far in giving the witness stand a better community reputation. I believe that it is precisely such a policy consideration which underlies section 765 of the Evidence Code. It reads, in pertinent part, as follows: "The court shall exercise reasonable control over the mode of interrogation of a witness, so as . . . to protect the witness from undue harassment and embarrassment."[3]

Policy considerations aside, I do not believe that the history of section 352 permits us to depart from its plain meaning and to create areas of judicial impotence to exclude prejudicial evidence.[4]

Section 352 is the direct lineal descendant of rule 303 of the much maligned Model Code of Evidence. (See 19 State Bar J. 262.) That section read as follows: "(1) The judge may in his discretion exclude evidence if he finds that its probative value is out-weighed by the risk that its admission will (a) necessitate undue consumption of time, or (b) cre-

---

[3]Certainly that was the suggestion in a dictum contained in *People* v. *Dukes,* 241 Cal.App.2d 488, 493, fn. 7 [50 Cal.Rptr. 609]. Since I was the author of that dictum, I can at least claim that if I am in error, I am consistent.

[4]The Law Revision Commission's comment to section 325 states that the section "expresses a rule recognized by statute and in several California decisions." It then refers to Code of Civil Procedure, section 1868, dealing with "collateral facts," and Code of Civil Procedure. section 2044, the predecessor of section 765. It cites *Adkins* v. *Brett,* 184 Cal. 252, 258 [193 P. 251]; and *Moody* v. *Peirano,* 4 Cal.App. 411, 418 [88 P. 380]. The correctness of the comment is open to doubt. One has difficulty reconciling it with cases such as *Martin* v. *Pacific Gas & Elec. Co.,* 203 Cal. 291, 299 [264 P. 246] and *Mohn* v. *Tingley,* 191 Cal. 470, 491-492 [217 P. 733]. In any event, if the comment is correct, then prior felony impeachment under Code of Civil Procedure, section 2051 has been subject to judicial discretion all along. We just did not know it. If it is incorrect, section 352 changed the law.

ate substantial danger of undue prejudice or of confusing the issues or of misleading the jury, or (c) unfairly surprise a party who has not had reasonable ground to anticipate that such evidence would be offered. (2) *All Rules stating evidence to be admissible are subject to this Rule unless the contrary is expressly stated."* (Italics added.)

Obviously if section 352 of the Evidence Code contained an express direction such as rule 303(2) of the Model Code, it could not possibly be contended that section 788 is not limited by section 352. Because it may be thought significant that no similar provision can be found in section 352, it becomes necessary to note how it came to be omitted.

Rule 303 was transmuted into rule 45 of the Uniform Rules of Evidence, approved in 1953. That rule read as follows: *"Except as in these rules otherwise provided,* the judge may in his discretion exclude evidence if he finds that its probative value is substantially outweighed by the risk that its admission will (a) necessitate undue consumption of time, or (b) create substantial danger of undue prejudice or of confusing the issues or of misleading the jury, or (c) unfairly and harmfully surprise a party who has not had reasonable opportunity to anticipate that such evidence would be offered." (Italics added.)

The phrase "except as in these rules otherwise provided," while perhaps not as strong as rule 303(2) of the Model Code, is obviously its equivalent. In its tentative recommendation (6 Cal. Law Revision Com. Rep. 612), the California Law Revision Commission recommended that the phrase be deleted as unnecessary because "[t]he only exception to the rule is found in URE Rule 47, which has been revised to eliminate that exception."[5] It seems perfectly obvious that the recommended deletion of the phrase for the sole reason that it became unnecessary because of the concurrent deletion of the only provision to which it applied, indicates the Law Revision Commission's belief that rule 45 was an umbrella section applicable to all admissible evidence.

Rule 45 as tentatively recommended to the Legislature read as follows: "The judge may in his discretion exclude evidence if he finds that its probative value is substantially outweighed by the risk that its admission will (a) necessitate undue consumption of time, or (b) create substantial danger of undue prejudice or of confusing the issues or of misleading the jury." (6 Cal. Law Revision Com. Rep. 612.) In the final recommendation, rule 45

---

[5]URE rule 47 provided that in criminal actions rule 45 could not be used to exclude evidence "of a trait of an accused's character as tending to prove his guilt or innocence . . ." I need not dwell on the significance of the fact that the Law Revision Commission— and later the Legislature—eliminated the Uniform Rules' only exception to rule 45.

became section 352 of the proposed Evidence Code in substantially identical language. It was adopted by the Legislature without any change.

The omission from section 352 of the substance of rule 303(2) of the Model Code is therefore without significance. On the contrary the treatment of rules 45 and 47 of the Uniform Rules by the Law Revision Commission, strongly suggests that section 352 of the Evidence Code was intended to apply across the board.

Nor do I believe that it is properly arguable that prior felony impeachment is excepted from the application of section 352, because section 788 affirmatively allows it. Analytically the only reason why it was necessary to provide specifically for such impeachment is this: section 1100 permits, in the absence of the statute to the contrary, proof of character by "evidence of specific instances of . . . conduct." Section 787, however, prohibits such evidence to impeach or rehabilitate a witness. Thus, in order to preserve impeachment with prior felony convictions, it was necessary to put section 788 into the code.[6] The truth is that the Evidence Code contains many sections making certain types of evidence specifically admissible which are admittedly redundant in view of section 351, stating that all relevant evidence is admissible.[7] Other such sections are in the code because, like section 788, they are exceptions to some rule of exclusion.[8] Into the latter category fall such matters as certain types of character evidence

---

[6]Another, purely technical, reason for an affirmative statement permitting prior felony impeachment probably was to give the draftsman a jumping off point for the exceptions contained in section 788.

[7]See for example sections 780 and 1100 and the Law Revision Commission comments thereto.

[8]Section 788 is one of the relatively few sections of the Evidence Code which were not enacted in the form of the Law Revision Commission's recommendations. It recommended that the felony used to impeach a witness had to be one which contained, as an essential element, "dishonesty or false statement." (*People* v. *Kelly*, 261 Cal.App.2d 708, 712 [68 Cal.Rptr. 337]; *People* v. *Stewart*, 240 Cal.App.2d 1, 7 [50 Cal.Rptr. 26].) During hearings before the Assembly Interim Committee on Judiciary, held on December 16 and 17, 1964, substantial opposition to this departure from tradition and statute (Code Civ. Proc., § 2051), developed. (Assembly Interim Committee on Judiciary, Transcript of Proceedings on Proposed Code of Evidence, pp. 117-127, 137-139, 150.) The section was then rewritten in its present form. Were it not for the legislative history of section 788 it would be quite arguable that the three felonies with which defendant was impeached should not have been used for that purpose as a matter of law. Section 786 applies to all character evidence used to attack or support the credibility of a witness. It limits the traits of character which can be thus used to "honesty or veracity, or their opposites." As already noted the only reason why it was necessary to provide specifically that felony convictions could be used to impeach a witness was section 787, which prohibits the admission of specific instances of conduct "as tending to prove a trait" of the witnesses' character. Nothing suggests that in section 787 the Legislature visualized traits of character other than those mentioned in section 786. That being so, the exception in section 788 only covers felonies which do involve a trait of dishonesty or mendacity.

(§§ 1102-1104), and certain exceptions to the hearsay rule.[9] Why are those portions of the code not immune from section 352? In asking this rhetorical question I assume, as a matter of course, that they are not. What prompts me to take the time to write this appendix to the court's opinion is my fear that, by the use of reasoning similar to that employed in *Romero*, section 352 will become a dead letter in other instances where the Evidence Code contains affirmative language of admissibility.

*Romero* relies chiefly on *People* v. *Kelly, supra,* 261 Cal.App.2d 708, a case which admittedly did not involve the question of the existence of a discretion with respect to section 788, but merely with a claimed abuse thereof. The *Romero* court, at page 46, emphasized the following language from *Kelly*: "It was the right of the prosecution to attack appellant's credibility as a witness, and for that purpose to show his prior felony convictions." (*People* v. *Kelly, supra,* 261 Cal.App.2d at p. 712.) The *Kelly* court, however, had then reviewed the language and legislative history of section 788 and had held that "the trial court did not err *or abuse its discretion* in receiving this evidence." (*People* v. *Kelly, supra,* 261 Cal.App.2d at p. 713. Italics added.)

In any event, what the *Kelly* court said about the "right" of the prosecution to attack appellant's credibility as a witness by showing his prior felony convictions, can with equal fervor be said about the "right" of a defendant in a criminal case to call character witnesses (§ 1102), his "right" to prove any relevant character trait of his victim (§ 1103) or the "right" of any party to a lawsuit to besmirch or glorify the character of any witness. (§§ 786, 790, 1100.)

Unless section 352 is to be confined to a few innocuous situations, such "rights" simply do not exist in the sense that, to deny them, is automatically error. I do not for one moment suggest that trial court discretion under section 352 is not subject to appellate control.[10] Thus it is hard to imagine

---

[9]While most exceptions to the hearsay rule state that the evidence in question "is not made inadmissible by the hearsay rule," sections 1224, 1225, 1282 and 1283 state in positive terms that the evidence covered by those sections "is . . . admissible" or "shall be received."

[10]The comment to section 45 of the Uniform Rules reads as follows: "This applies to frequently arising situations where the trial may get out of hand by the injection of collateral issues having only slight probative value and which would tend to confuse the jury, or have illegitimate emotional appeal. Obviously the judge should have some discretion to prevent the trial from going off on tangents of relative unimportance. Likewise some protection is needed from unfair surprise with respect to such matters. This represents the sort of thing which the trial judge does every day in actual practice and which is sanctioned here, *in the assurance that the results of rare and harmful abuse of discretion will be readily corrected on appeal.* It is a rule of necessity. Its sanction cannot be escaped if we are to have orderly and efficient trial procedure." (Italics added.)

a set of circumstances which would authorize a trial court to prevent a defendant in a criminal case from calling character witnesses or proving that the prosecution's principal witness has a community reputation for being a pathological liar. Nevertheless, there is nothing in the statutory language to indicate that even with respect to evidence of that kind the Legislature did not extend to the trial courts a residual power to exercise discretion to exclude under section 352. It should be remembered that the section is the only provision in the code which authorizes the exclusion of cumulative evidence.[11] (*People* v. *Cavanaugh,* 69 Cal.2d 262, 269-270 [70 Cal.Rptr. 438, 444 P.2d 110].) Even impeachment of a prosecution witness or evidence concerning a defendant's good character can reach the point of vanishing returns.

Prior felony impeachment, by contrast to the type of evidence just mentioned, seems an excellent candidate for consideration under section 352.[12]

When the Legislature refused to accept the Law Revision Commission's recommendation that prior felony impeachment be limited to felonies containing as an essential element, "dishonesty or false statement" (see fn. 8, *ante*), it opened the door to impeachment by the proof of convictions for felonies involving no moral turpitude of any kind! We cannot, of course, read the Legislature's mind, but it seems highly likely that one of the reasons why it rejected the recommendation is that it felt that any prejudice which the commission's recommendation sought to prevent, could be obviated on a case by case basis, through an intelligent application of section 352.

It should, perhaps, be mentioned that nothing in any opinion of our Supreme Court of which I am aware justifies the piecemeal application of section 352 suggested by *Romero.* All the indications are to the contrary. Quite recently in *In re Lifschutz,* 2 Cal.3d 415 [85 Cal.Rptr. 829, 467 P.2d 557], the court discussed the so-called patient-litigant exception to the patient-psychotherapist privilege. (Evid. Code, § 1016.) While denying that the psychotherapist could assert a privilege to withhold information concerning a patient who had waived his own privilege the court said: "When the questioning of the psychotherapist or patient as to confidential communications occurs at the trial itself, the danger of publicity and em-

---

[11]Arguably section 765 which enjoins the court to make the examination of a witness "as rapid, as distinct, and as effective for the ascertainment of the truth, as may be," can be used to control the production of some cumulative evidence. Section 723 only applies to expert witnesses.

[12]Guidelines for the exercise of such discretion can be found in *Gordon* v. *United States,* 383 F.2d 936, 940-941 [127 App. D.C. 343]. The case, together with its predecessors, *Luck* v. *United States,* 348 F.2d 763, 768-769 [121 App. D.C. 151]; *Brown* v. *United States,* 370 F.2d 242, 243-245 [125 App. D.C. 220], are cases decided by the Washington, D.C. Circuit which in *Luck,* established a nonstatutory discretion to exclude prior felony impeachment, in spite of a statute (14 D.C. Code § 305), permitting it.

barrassment is increased. Of course, unless the information sought is directly relevant to the issue as revealed by the evidence at trial, the communication is privileged and no disclosure can be compelled. Moreover, as with any evidence, the court retains discretion to 'exclude evidence if its probative value is substantially outweighed by the probability that its admission will . . . (b) create substantial danger of undue prejudice. . . .' (Evid. Code, § 352.) [Footnote omitted.] In this area, the careful exercise of this discretion is necessary to provide substantial protection for the patient's legitimate interests; [footnote omitted] without this element of court supervision intensive examinations of psychotherapists and patients may often ultimately result in substantially more harm than benefit." (*In re Lifschutz*, 2 Cal.3d 415, 438 [85 Cal.Rptr. 829, 467 P.2d 557].)

More to the point, perhaps, is an alternative ground for the decision in *People* v. *Sam*, 71 Cal.2d 194 [77 Cal.Rptr. 804, 454 P.2d 700]. There the trial court had admitted evidence of prior criminal acts which the Supreme Court held not to be sufficiently distinctive to be admissible to prove a *modus operandi*. Then the court went on: "Even if we assume a relevance which we fail to perceive, the evidence would properly have been excludible as unduly prejudicial under the discretion allowed by Evidence Code section 352. We have elsewhere recognized the substantial prejudicial effect inherent in evidence of prior offenses (*People* v. *Haston* (1968) *supra*, 69 Cal.2d 233, 246 [70 Cal.Rptr. 419, 444 P.2d 91]), for which reason such evidence may be excluded despite apparent relevance. This case is a dramatic illustration of the prejudice that can be injected into a trial through the device of demonstrating prior criminal acts." (*People* v. *Sam*, 71 Cal.2d 194, 206 [77 Cal.Rptr. 804, 454 P.2d 700].)

The similarity of the prejudicial effect of evidence of other crimes which is admitted on the merits and such evidence which is admitted to impeach a witness who happens to be also the defendant in a criminal case, leads me to believe that the question raised by *Romero* is still an open one as far the Supreme Court is concerned.

Nothing in this concurring opinion is intended to suggest that, in this particular case, the trial court's discretion was abused by permitting the challenged impeachment. Nor do I criticize the trial court for stating that it had no discretion. The trial took place well after *People* v. *Romero, supra,* had become final.

Appellant's petition for a hearing by the Supreme Court was denied December 30, 1970. Peters, J., and Mosk, J., were of the opinion that the petition should be granted.