[No. H009887. Sixth Dist. July 25, 1994.]

DELBERT ROBBINS et al., Plaintiffs and Appellants, v.
STEVEN WONG et al., Defendants and Respondents.

DELBERT ROBBINS, Plaintiff and Appellant, v.
BARBARA ELIZABETH SCHMELZER, Defendant and Respondent.

**[Opinion certified for partial publication.\*]**

\*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts IV, V and VI.

**COUNSEL**

Eduardo M. Xavier and Verne A. Perry for Plaintiffs and Appellants.

Hoge, Fenton, Jones & Appel, Paul W. Breen, Nagle, Vale, McDowall, Cotter & Dunn, Robert D. Vale and David S. Rosenbaum for Defendants and Respondents.

**OPINION**

**BAMATTRE-MANOUKIAN, J.—**

I.

Plaintiffs appeal from judgments in their favor in these two consolidated personal injury actions. (Robbins v. Wong (Super. Ct. Santa Clara County, No. 663024) and Robbins v. Schmelzer (Super. Ct. Santa Clara County, No. 691893)) They claim that evidentiary rulings and attorney misconduct tainted the trial, resulting in jury verdicts which failed to compensate them for their damages.

In the published portion of this opinion, we address the question of the admissibility of a prior felony conviction for impeachment purposes in a civil trial. As the parties have framed the issue, does article I, section 28, subdivision (f), added to the California Constitution in 1982 by Proposition 8, apply in civil proceedings?[1] We find it does not. Nor do the decisions which have developed rules for admissibility of felony impeachment evidence in criminal cases apply as binding precedent in civil proceedings,

---

[1] Section 28, subdivision (f) provides: "Any prior felony conviction of any person in any criminal proceeding, whether adult or juvenile, shall subsequently be used without limitation for purposes of impeachment or enhancement of sentence in any criminal proceeding. . . ."

although they may provide guidelines for civil trial judges. We hold that felony impeachment evidence is admissible in civil cases under Evidence Code section 788. Under Evidence Code section 352, however, the trial court is required to balance probative value against potential prejudicial effect, upon a timely and specific objection.

Plaintiffs' remaining claims are discussed in the unpublished portions of this opinion. We find no reversible error and we therefore affirm the judgments.

## II.

### BACKGROUND

This case involves two automobile accidents. The first accident occurred on August 14, 1987, during the afternoon rush hour on Highway 101 in San Jose. Delbert Robbins was driving a pickup truck and Matthew Kirchner was his passenger. Steven Wong was driving the car behind Robbins, which was owned by his father, George Wong. Traffic was congested and was frequently stopped. Wong started to make a lane change and then decided against it. Traffic stopped suddenly in front of him and he was unable to avoid hitting the rear of Robbins's truck.

Wong's vehicle sustained damage to the grill and hood, and Robbins's truck sustained damage to its rear bumper and right quarter panel. The impact caused Robbins to be flung forward into the steering wheel. Kirchner banged his hand and wrist on the windshield and his head hit the back window of the cab. Robbins and Wong pulled their vehicles off the highway and got out to inspect the damage and exchange names and addresses. No one was experiencing physical problems at the time. No one suggested calling the police to the scene. Both cars were drivable.

Robbins and Kirchner, who worked for American Builders, had been on their way to deliver some sheetrock to a jobsite. After the accident they drove to the site. Workers there helped to unload the sheetrock. They then returned to the Hayward office of American Builders. Kirchner, who was 15 years old at the time, was working for American Builders as a summer job. His father was also employed there. After returning to the office, Kirchner reported to his father that he was experiencing stiffness and pain in his neck. His father took him to the hospital emergency room where he was examined and X-rayed. He was given medication and a soft cervical collar.

Kirchner's pain continued through the night. The following morning, when his condition had not improved, his parents took him to see an

orthopedic surgeon, Dr. Paul Plattner, at Merritt Hospital in Oakland. Dr. Plattner's diagnosis was that Kirchner had sustained a whiplash or cervical sprain-strain type of injury to his neck, which manifested itself with pain, spasm, tenderness and restricted range of motion. Dr. Plattner was concerned about the possibility of spinal instability and consequently he had Kirchner see a neurosurgeon that same day. The neurosurgeon, Dr. Gifford, after examining Kirchner and the X-rays, concluded that there was no significant bony injury to Kirchner's neck.

Dr. Plattner recommended Kirchner continue wearing the cervical collar and continue the medications. In addition he prescribed physical therapy. Kirchner was unable to return to work for the rest of the summer, a period of three weeks. For approximately a month following the accident he required help with basic activities such as showering and dressing. After two months, Dr. Plattner felt he was improved enough to discontinue the formal physical therapy. Within 60 to 90 days he was recovering his mobility and was able to move his neck around without discomfort. Dr. Plattner saw Kirchner on December 22, 1987, approximately four months after the accident, and found that Kirchner had full range of motion with the exception that twisting was limited at the extremes and there was still some stiffness.

Kirchner claimed medical expenses of $1,119, a wage loss of $484.28, and $10,000 for pain and suffering. The jury awarded him a total amount of $3,057.

Delbert Robbins was 32 years old at the time of the accident. Prior to working for American Builders he had worked for seven years at Pacific Coast Chemical as a warehouseman, foreman and mechanic. He worked at American Builders as a stocker, carpenter, plumber and general laborer. Although he had never specifically injured his back before the accident, he had at times experienced pain in his low back and had seen doctors about back problems while working at Pacific Coast Chemical. He also had experienced some neck problems prior to the accident, and had suffered an injury to his right arm in 1983.

After Robbins and Kirchner proceeded to the jobsite following the accident on August 14, 1987, Robbins decided not to help unload the sheetrock because he felt nauseous and "shaken up" from the accident. Later that night he went to the hospital because of neck and back pain. He was given some medication and released. The next day he called work and informed his employer he did not think he was capable of working. Over the next few days he experienced tingling and heat in his lower back and had difficulty moving. Several weeks later he consulted with an attorney who referred him

to a doctor. The doctor referred him to a chiropractor. He saw the chiropractor twice and then did not return.

A month after the accident, Robbins began seeing another chiropractor, Lauren Downes, complaining of pain in his neck and right shoulder area and down his right arm, and also middle back pain leading down towards the tailbone.

Approximately a month to a month and a half after the accident, Robbins had not returned to work. He was experiencing pain in his lower back, middle back, upper neck and right arm. One of the owners of American Builders referred him to Dr. McChesney. Dr. McChesney prescribed medication and referred him to Dr. Max Scheck, an orthopedic surgeon.

Robbins first saw Dr. Scheck on October 20, 1987. Dr. Scheck determined that Robbins had suffered a strain of the right spino-scapular musculature, as well as of his back. He referred Robbins for physical therapy, in the form of ultrasound and massage, recommended home exercises and asked him to return in three weeks after he had received five or six therapeutic treatments.

Robbins rescheduled several appointments with Dr. Scheck, because he had not completed the recommended therapeutic treatments. He continued to see Dr. Downes during this time but did not return to Dr. Scheck until February 9, 1988. At that visit Dr. Scheck found that Robbins still had tenderness from the injury to his neck and upper spine although his back problems had "almost disappeared." He recommended continued therapy. Dr. Scheck saw Robbins again on March 22, 1988. He felt at that time that Robbins still had symptoms from his neck injury and recommended he continue with neck halter traction at home. He released Robbins from his care, suggesting he return only if needed. Dr. Scheck released Robbins to return to work May 31, 1988.

Robbins continued to see Dr. Downes, the chiropractor, during 1988. Dr. Downes's office issued a further disability form for Robbins for the period from May 31, 1988 through July 7, 1988. Robbins returned to work, with light duties, on July 18, 1988. On cross-examination he admitted that the reason he had returned to work was so that he could participate in a work furlough program rather than be incarcerated.

Four months after Robbins started back to work, he was involved in a second accident. On November 15, 1988, he was riding as a passenger in a

pickup truck on the way to a jobsite. Defendant Barbara Schmelzer was driving a car behind the truck in slow traffic. She attempted to change lanes but misjudged the distance between her vehicle and the truck and collided with the rear end of the truck, travelling approximately five miles per hour. Her headlamp was broken and the rear bumper of the truck was damaged. Robbins was thrown forward and struck the dashboard of the truck with his right forearm. The police arrived on the scene and a police report was filed. Robbins and the driver of the truck then proceeded to the jobsite.

A couple of days after the second accident, Robbins returned to Downes Chiropractic, with complaints about his right arm, upper neck and lower back. He continued to work for two months until January 13, 1989, when his right arm suddenly flared up and became swollen. He went to the hospital and was given an arm splint, a cast and anti-inflammatory medication. He also returned to see Dr. Scheck on January 24, 1989, complaining of severe pain in his low back with radiation into both legs. It was Dr. Scheck's impression that in the second accident Robbins had suffered an aggravation of his low-back condition.

After his arm flared up on January 13, 1989, Robbins stopped working. He went on disability starting on January 16, 1989. He continued treatments at Downes Chiropractic during 1989 for pain in his neck, shoulder and right arm. He was released from care at Downes Chiropractic on September 24, 1989. He did not return to his job at American Builders (also known as Amfel), but in October of 1989 he went back to work for Pacific Coast Chemical on light duty. He continued working through 1990. In February of 1991, his back flared up and he was out of work again until August of 1991.

On August 9, 1991, Robbins returned to work full-time at Pacific Coast Chemical, informing his employer that he had been released from disability. Further evidence revealed that Robbins had begun a work furlough program with the Alameda County Sheriff's Department on August 8, 1991.

Robbins claimed that his total medical expenses for both accidents amounted to $8,643.78. He claimed a total of $155,262 for wages lost in 1987, 1988, 1989 and 1991, due to his injuries, and $150,000 for pain and suffering. The jury awarded him $18,700 in damages from the first accident and $1,310 additional damages from the second accident. The total verdict in favor of Robbins was $20,010.

## III.

### Admission of the Prior Felony Conviction

In 1978 Robbins pled guilty to a violation of Health and Safety Code section 11352, committed in September of 1977. At trial in the personal injury cases he sought to exclude evidence of the prior felony on the basis that it was remote in time, had no relevance to the facts of the present case, and was highly prejudicial. Defendants argued that the prior felony conviction could be used to impeach Robbins's credibility because it involved a crime of "moral turpitude." (*People* v. *Castro* (1985) 38 Cal.3d 301, 317 [211 Cal.Rptr. 719, 696 P.2d 111].) Therefore it was admissible under authority of article I, section 28, subdivision (f) (hereafter section 28(f)) of the California Constitution, as interpreted by *People* v. *Castro*, *supra*, 38 Cal.3d 301. Robbins responded that section 28(f) and *People* v. *Castro* do not apply to civil proceedings and he argued that his prior conviction was not admissible to impeach him because it did not involve traits of honesty or veracity. (*People* v. *Spearman* (1979) 25 Cal.3d 107 [157 Cal.Rptr. 883, 599 P.2d 74].)

The court eventually agreed with defendants and ruled to allow evidence of Robbins's prior conviction to impeach his credibility. Robbins testified to the fact of his conviction in answer to counsel's questions during direct examination. He stated he had been convicted of a felony, namely a violation of Health and Safety Code section 11352 committed in 1977, in that he did "transport, sell, furnish and give away a controlled substance, to wit: cocaine." He testified further that he had served all punishment that had been imposed on him for that violation. The court took a short recess and then admonished the jury as follows: "Ladies and gentlemen, Mr. Robbins testified he had been convicted of a felony in 1977, and it was described what it was. You are advised that that kind of evidence comes in for a very limited purpose and you will be instructed by me on that subject at the end of the case. But the purpose simply, the law allows that kind of evidence on the question of a witness['s] credibility. It doesn't mean that the witness is to be disbelieved, it doesn't mean that he is a bad person or an evil person who commits violations of the law, and it shouldn't be considered by you as any evidence of his character. It is admissible solely on the question of credibility or believability, and I will instruct you on that at the appropriate time." There was no further mention of the felony conviction during trial.

On appeal the parties focus on the question whether the rule regarding admissibility of prior conviction evidence set forth in section 28(f) should

apply in civil proceedings. A brief historical review will place this issue in perspective.

At common law, a person who had been convicted of an "infamous crime"—a term which encompassed treason, any felony, a misdemeanor involving dishonesty or false statement, or the obstruction of justice—was deemed incompetent as a witness. (McCormick on Evidence (4th ed. 1992) § 42, p. 142; see *People* v. *Castro, supra,* 38 Cal.3d at p. 314; *People* v. *Ward* (1901) 134 Cal. 301, 308 [66 P. 372].) The California Legislature abandoned this principle of absolute disqualification when it enacted section 408 of the Civil Practice Act of 1851. That provision required a witness to "answer as to the fact of his previous conviction for felony."[2]

The law was further refined in 1872 with the adoption of Code of Civil Procedure former section 2051.[3] Section 2051 sanctioned the use of a prior felony conviction as a ground of impeachment, but otherwise precluded evidence of particular wrongful acts. The statute was applicable in both civil and criminal proceedings, and was generally interpreted as mandating the admission of any prior felony conviction for purposes of impeachment without regard to the nature of the offense and without any judicial balancing of the crime's probative and prejudicial value. (See, e.g., *Title Insurance etc. Co.* v. *Ingersoll* (1908) 153 Cal. 1, 7-8 [94 P. 94]; *Conger* v. *White* (1945) 69 Cal.App.2d 28, 36-37 [158 P.2d 415]; *People* v. *Perez* (1962) 58 Cal.2d 229, 238-239 [23 Cal.Rptr. 569, 373 P.2d 617, 3 A.L.R.3d 946]; *People* v. *Martin* (1967) 250 Cal.App.2d 263, 266-267 [58 Cal.Rptr. 481].) This theory of admissibility was premised upon the belief that proof of a felony conviction constituted an "assault upon [the] character" of a witness (*Title Insurance etc. Co.* v. *Ingersoll, supra,* 153 Cal. at p. 8) and thus was relevant to credibility. (*Ibid.*; accord *Conger* v. *White, supra,* 69 Cal.App.2d at p. 37.)

---

[2]Section 408 provided: "A witness shall answer questions legal and pertinent to the matter in issue, though his answer may establish a claim against himself; but he need not give an answer which will have a tendency to subject him to punishment for a felony; nor need give an answer which will have a direct tendency to degrade his character, unless it be to the very fact in issue, or to a fact from which the fact at issue would be presumed. But a witness shall answer as to the fact of his previous conviction for felony." (Stats. 1851, ch. 5, § 408. pp. 115-116.)

[3]Code of Civil Procedure former section 2051 provided: "A witness may be impeached by the party against whom he was called, by contradictory evidence or by evidence that his general reputation for truth, honesty, or integrity is bad, but not by evidence of particular wrongful acts, except that it may be shown by the examination of the witness, or the record of the judgment, that he had been convicted of a felony." (Code Civ. Proc., § 2051 (1st ed. 1872, Haymond & Burch, comrs.-annotators) pp. 532-533.) The statute was later amended to prohibit impeachment where the witness had received a full and unconditional pardon, based upon a certificate of rehabilitation. (Code Civ. Proc., former § 2051; Stats. 1949, ch. 333, § 1, pp. 616-617.)

The California Evidence Code, which was enacted by our Legislature in 1965, became effective January 1, 1967. After the adoption of the Evidence Code, felony impeachment in both civil and criminal proceedings fell within the province of Evidence Code[4] section 788. Although the Law Revision Commission proposed limiting felony impeachment to proof of prior felonies involving dishonesty or a false statement (see 7 Cal. Law Revision Com. Rep., Recommendation of the Law Revision Commission proposing an Evidence Code, § 788, pp. 141-143), the Legislature rejected any such restriction. Thus, as enacted, section 788[5] makes no reference to the nature of the past felony conviction and was initially construed as a recodification of Code of Civil Procedure former section 2051. (7 Cal. Law Revision Com. Rep. (1965) Legislative Com. com., p. 1133; *People* v. *Martin, supra,* 250 Cal.App.2d at pp. 266-267.) Hence, courts generally interpreted section 788 as providing for the mandatory admission of any prior felony conviction for purposes of impeachment and precluding the judicial weighing of prejudice against probative value under section 352.[6] (See, e.g., *People* v. *House* (1970) 12 Cal.App.3d 756, 762-763 [90 Cal.Rptr. 831]; *People* v. *Kelly* (1968) 261 Cal.App.2d 708, 712-713 [68 Cal.Rptr. 337]; but cf. *People* v. *House, supra,* 12 Cal.App.3d. 756, 773 (conc. opn. of Kaus, P. J.) [suggesting that the Legislature rejected the Law Revision Commission's proposed limitation on section 788 intending that the application of section 352 would prevent the admission of unduly prejudicial evidence].)[7]

The law governing impeachment by prior felony convictions in criminal proceedings underwent a significant change in 1972, when the California Supreme Court handed down its decision in *People* v. *Beagle, supra,* 6 Cal.3d 441. Finding "nothing in the statutory language to exempt section 788 from the general evidentiary provisions applicable to all rules of admissibility," the *Beagle* court held that section 352 vested the trial court with "discretion . . . to exclude evidence of prior felony convictions when their probative value on credibility is outweighed by the risk of undue prejudice." (6 Cal.3d at pp. 452-453.) The court disavowed any intention "to establish

---

[4]All unspecified statutory references are to the Evidence Code.

[5]Section 788, which has not been amended since its enactment, provides in relevant part: "For the purpose of attacking the credibility of a witness, it may be shown by the examination of the witness or by the record of the judgment that he has been convicted of a felony . . . ."

[6]Section 352 provides: "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

[7]There are few civil cases dealing with felony impeachment and our research disclosed no civil holding acknowledging the interplay between sections 352 and 788 between the effective date of the Evidence Code in 1967 and the date of the Supreme Court's decision in *People* v. *Beagle* (1972) 6 Cal.3d 441 [99 Cal.Rptr. 313, 492 P.2d 1].

rigid standards" for the admission of such evidence, but did suggest certain guidelines for the exercise of judicial discretion. (*Id.* at p. 453.)

In a series of decisions beginning with *People* v. *Antick* (1975) 15 Cal.3d 79 [123 Cal.Rptr. 475, 539 P.2d 43], the Supreme Court further delineated the boundaries of discretion in the area of felony impeachment. Among other things, *Beagle* was interpreted as prohibiting prior felony impeachment unless the felony involved dishonest conduct. As noted by our Supreme Court in *People* v. *Castro, supra,* 38 Cal.3d at pages 307-308, the *Antick* line of cases caused considerable controversy. They were criticized as transforming the guidelines of *Beagle* into "rigid limitations on the discretion of the trial court" and are generally recognized as the impetus for California Constitution article I, section 28. (38 Cal.3d at pp. 308-309.)

With the passage of section 28(f), on June 8, 1982, the law on felony impeachment in criminal proceedings was again transformed. Section 28(f) provides: "Any prior felony conviction of any person *in any criminal proceeding,* whether adult or juvenile, shall subsequently be used without limitation for purposes of impeachment or enhancement of sentence *in any criminal proceeding. . . .*" (Italics added.)

In *People* v. *Castro, supra,* the Supreme Court interpreted the constitutional provision as abrogating *Antick* and its progeny, including *People* v. *Spearman, supra,* 25 Cal.3d 107, upon which plaintiffs rely. (*People* v. *Castro, supra,* 38 Cal.3d at pp. 312-313.) However, *Castro* also concluded that section 28(f) did not abolish trial court discretion, under section 352, with respect to felony impeachment. Based on due process considerations, *Castro* held that impeachment is prohibited unless the prior offense is relevant to the witness's veracity. (38 Cal.3d at pp. 313-316.) Establishing a new test for relevancy in criminal cases, *Castro* held that a felony conviction offered for impeachment is "prima facie admissible" subject to the trial court's discretion under section 352, if it involves "moral turpitude," i.e., evidences a "readiness to do evil." (*Ibid.*) In so holding, *Castro* pointed out that the concept of moral turpitude does not depend on dishonesty being an element of the felony. (*Id.* at p. 315.)

 In the instant case, plaintiffs contend that the trial court erred in relying upon section 28(f) for its determination to admit the prior felony because the constitutional provision is inapplicable to civil cases. We find this point to be meritorious.

 It is well settled law that "[c]onstitutional provisions, like statutes, must be read in conformity with their plain language [citation], and in such

a manner as to give effect wherever possible to every word. [Citation.]" (*People* v. *Harris* (1989) 47 Cal.3d 1047, 1082 [255 Cal.Rptr. 352, 767 P.2d 619].) It is also well established that " '[w]hen statutory language is thus clear and unambiguous there is no need for construction, and courts should not indulge in it.' [Citation.]" (*In re Lance W.* (1985) 37 Cal.3d 873, 886 [210 Cal.Rptr. 631, 694 P.2d 744].) In the case of section 28(f), the express terms of the provision limit its application to criminal proceedings.

Although the court in *Castro* did state, in response to an equal protection argument, that its interpretation of subdivision (f) rendered the differences between civil and criminal cases "nonexistent" (*People* v. *Castro, supra,* 38 Cal.3d at p. 317), we do not understand this remark as an attempt to read out of section 28(f) its limitation to criminal proceedings. *Castro* was not concerned with civil law and, as the parties concede, there has been no direct holding on the applicability of section 28(f) to civil cases.

Although we agree with plaintiffs that section 28(f) is inapplicable in the present case, the second component of their argument rests upon the faulty assumption that if section 28(f) is inapposite, then felony impeachment in civil proceedings is governed by criminal cases, such as *People* v. *Spearman, supra,* 25 Cal.3d 107, which preceded the adoption of the constitutional provision and imposed a more stringent test for admissibility. We find no reasonable basis for such a conclusion.

Even if we assume that the *Antick* line of cases, including *Spearman,* retain some vitality insofar as they pertain to civil law, the holdings in all of these decisions dealt with the admission of prior felony convictions to attack a criminal defendant's credibility. The same must be said of *Beagle* and *Castro.* None of these decisions involved civil litigants, nor did the court in any of these cases consider factors relevant to a civil proceeding. Rather, the analysis of the cases rested upon considerations which are intrinsic to criminal proceedings, and do not translate well when superimposed on civil actions.

Albeit in dicta, at least one appellate decision has recognized as much. In *Holley* v. *J & S Sweeping Co.* (1983) 143 Cal.App.3d 588 [192 Cal.Rptr. 74], the appellant in a negligence action claimed the trial court had committed *Beagle* error. Specifically, he argued that his 13-year-old prior felony conviction for receiving stolen property should have been excluded on the ground that it was too remote. Although the *Holley* court addressed the argument as framed by the appellant, it noted that it was assuming arguendo "that the relevant prophylactic rules governing the use of prior felony

convictions for purposes of impeachment [in criminal cases] equally apply in civil proceedings." (*Id.* at p. 594.) In a footnote, however, the court acknowledged that this "assumption appears somewhat doubtful in light of the unrelated factors involved in a criminal prosecution." (*Id.* at p. 594, fn. 7.) As examples of such unrelated factors, *Holley* specified two of the four major considerations outlined by the *Beagle* court, i.e., "substantially similar criminal conduct" and "the potential coercive effect where the witnesses' liberty is at stake. . . ." (*Ibid.*)

One noted commentator has also indicated that "[t]he *Beagle* guidelines do not apply with the same precision in situations other than those in which the witness is testifying in a criminal jury trial." (1 Jefferson, Cal. Evidence Benchbook (2d ed. 1982) § 22.2, p. 625.) This same commentator has recognized that section 28(f) "is, by its express terms, applicable *only* to *criminal* proceedings," and has "no application to *civil* actions." (1 Jefferson, Cal. Evidence Benchbook (supp. June 1990) § 22.2, p. 256, italics in original.) He also acknowledges that the Supreme Court's decision in *Castro* is not binding in the civil context. (*Ibid.*) On principles of relevancy, Jefferson suggests that the moral turpitude test pronounced in *Castro* is an appropriate standard for admissibility in the civil context subject to the court's exercise of discretion under section 352. However, Jefferson recognizes that "the same degree of danger of prejudice to a party from evidence of a felony conviction is *not* as great to a party in a *civil* action as to the *defendant* in a *criminal* case." (1 Jefferson, *supra*, at p. 257; see, e.g., *Green v. Bock Laundry Machine Co.* (1989) 490 U.S. 504, 522 [104 L.Ed.2d 557, 572, 109 S.Ct. 1981] [federal rule authorizing impeachment by criminal convictions regards prejudice to anyone other than a criminal defendant " 'so minimal as scarcely to be a subject of comment.' . . ."])

Given the significant distinctions between the rights enjoyed by criminal defendants and civil litigants, and the diminished level of prejudice attendant to felony impeachment in civil proceedings, it is not unreasonable to require different standards of admissibility in civil and criminal cases. (See generally, *Green v. Bock Laundry Machine Co. supra*, 490 U.S. at p. 510 [104 L.Ed.2d at pp. 564-565] [recognizing dissimilarities between civil and criminal law and interpreting federal rule of evidence on convictions impeachment as having different application in civil and criminal cases].) Along this same line, it is significant to note that *Castro* recognized that even convictions which are not based on dishonesty or some other lack of integrity, such as assaultive crimes, bear some degree of relevancy to the issue of credibility. Based on a criminal defendant's due process right to a fair trial, however, the court imposed the requirement of moral turpitude as a threshold showing for relevancy in criminal cases. (38 Cal.3d at pp. 313-316.)

For the foregoing reasons, we conclude that section 28(f) does not apply to civil litigants. ■ We are also persuaded that the Supreme Court's decisions concerning felony impeachment in criminal decisions—whether decided before or after the adoption of section 28(f)—may not be construed as direct holdings on felony impeachment in civil proceedings. The trial court in a civil case, however, may utilize such decisions to formulate guidelines for the judicial weighing of probative value against prejudicial effect under section 352.

We further conclude that earlier civil decisions which interpreted Code of Civil Procedure former section 2051 as requiring the mandatory admission of felony impeachment evidence without regard to its probative and prejudicial effect were superseded by the adoption of sections 352 and 788 as part of the Evidence Code in 1967. (See *People* v. *Castro, supra,* 38 Cal.3d at pp. 306-307; *People* v. *Beagle, supra,* 6 Cal.3d at pp. 452-453; *People* v. *House, supra,* 12 Cal.App.3d at p. 773 (conc. opn. of Kaus P. J.) Thus, upon proper objection to the admission of a prior felony conviction for purposes of impeachment in a civil case, a trial court is bound to perform the weighing function prescribed by section 352. (See, e.g., *Chevalier* v. *Dubin* (1980) 104 Cal.App.3d 975, 980 [164 Cal.Rptr. 118]; see also 1 Jefferson, Cal. Evidence Benchbook, *supra,* § 22.2, p. 257.)

■ In the instant case, plaintiffs appear to have benefited from the court's reliance upon section 28(f). The court used the "moral turpitude" test announced in *Castro* to find that Robbins's prior conviction was relevant to credibility even though, as we hold today, that threshold test is not required in a civil case. Thus the court applied a stricter standard for admissibility than civil case law had heretofore recognized. The record also demonstrates that the court undertook to balance the probative value of the prior felony against its prejudicial effect. We can find no fault with the court's ruling. Accordingly, we conclude that the prior felony was properly admitted.

IV.-VI.*

. . . . . . . . . . . . . . . . . . . . . . . .

*See footnote, *ante,* page 261.

# VII.

## Disposition

The judgments are affirmed.

Cottle, P. J., and Elia, J., concurred.