Filed 4/11/14 Norton v. D'Sa CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| JANE NORTON, | B241091 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BP122948) |
| v. | |
| DESMOND A. D'SA, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Roy L. Paul, Judge. Affirmed.

Jane Norton, in pro. per., and Law Offices of E. Thomas Dunn, Jr., E. Thomas Dunn, Jr., for Plaintiff and Appellant.

Murphy Rosen, David E. Rosen, Jason L. Liang for Defendant and Respondent.

_____

A decedent named her sisters, a church, and a charity as beneficiaries of her trust. A niece sought to invalidate amendments to the trust removing her as the successor trustee and beneficiary. The trial court determined that decedent had the mental capacity to amend her trust and was not subjected to undue influence. We affirm.

## FACTS

Appellant Jane Norton is the niece of Betty Norton (decedent) and was a plastic surgeon. In 1995, appellant's license was suspended by the Medical Board of California. In 2003, she performed five elective surgeries on an unhealthy patient, against medical advice, which the Medical Board deemed to be "gross negligence." In 2004, appellant pleaded guilty to defrauding the federal government and her medical license was again suspended. In 2006, appellant relinquished her medical license.

With appellant's participation, decedent created "The Betty A. Norton Living Trust dated May 20, 2004" (the Trust). At the time, appellant was facing trial on criminal charges in federal court. The Trust initially appointed decedent—who was born in 1919—as the sole trustee; appellant was the successor trustee and sole beneficiary. Appellant was living in Southern California and saw or spoke to decedent regularly. Decedent was then 85 years old and depended upon appellant for assistance in business and personal matters.

After decedent received a sizable inheritance in January 2006, appellant took decedent to Attorney Stanley Hartford to amend the Trust so that she and appellant were cotrustees. Decedent promptly changed her mind and told Hartford that she did not want appellant to be cotrustee. In February 2006, decedent reinstated herself as the sole trustee. Appellant continued to be named as the successor trustee and sole beneficiary upon decedent's death.

In 2007, appellant moved to New York. She and decedent were rarely in touch during the last years of decedent's life, and appellant did not take care of decedent's business or personal needs. Appellant believed that decedent was able to take care of herself. Appellant testified that decedent "was probably a little angry" about appellant's

2

absence. Indeed, decedent contacted Attorney Mary Hamilton in 2007 to complain about appellant, and told Hamilton that she wished to leave her assets to her sisters.

Decedent met with Attorney William Hayter on August 18, 2008. Decedent was upset because appellant "was controlling her life" and left a car parked in decedent's driveway "for months at a time" while appellant was in New York. Also, appellant owed decedent money. Decedent told Hayter "that she was very, very unhappy with her niece, Jane Norton [and] that she wanted her out of the trust." Decedent indicated that she wished to leave Trust assets to two of her sisters and to a Catholic elder care charity. Hayter recommended that decedent return to Attorney Hartford to amend the Trust.

It was very clear to Hayter that decedent "did not want to leave her estate to her niece, Jane Norton, and wanted her out of the trust." Hayter described decedent as lucid, coherent and in control of her faculties during their meeting in August 2008. Hayter did not prepare any documents for decedent or see her again.

Around this period, decedent became friends with respondent Desmond D'Sa, through church. Like appellant, D'Sa has a checkered history. Despite graduating from law school and passing the California bar examination, D'Sa is not licensed to practice in California because his moral character application was denied. D'Sa was formerly employed as an assistant at a law firm: he was fired when it came to light that D'Sa misused firm stationary to secure "clients" and pretended to be their "attorney." D'Sa subsequently worked at Attorney Hayter's office from early 2009 until the end of 2010.

In 2007, D'Sa founded the Catholic Eldercare Charity of Long Beach, but testified that he does not receive any money from the organization. D'Sa provided decedent with companionship and assistance, visiting her two or three times per week, for three or four hours at a time. He prepared a power-of-attorney for decedent and she added him as a signator to her bank account. Decedent did not tell D'Sa that she was going to name him or his charitable organization as Trust beneficiaries.

In March 2009, decedent twice telephoned Attorney Hartford to say that she "does not want Jane to get [her] estate" and "wants [her] niece off of title." Decedent understood the nature of what she was doing, and Hartford had no concerns about her

3

mental capacity. Hartford did not create any Trust amendments after speaking to decedent.

Though neither Hartford nor Hayter prepared any Trust amendments for decedent, a third amendment to the Trust was signed by decedent and notarized by a notary in Hayter's office on May 11, 2009. The third amendment named D'Sa as successor trustee. A fourth amendment to the Trust, signed and notarized on May 14, 2009, states that decedent "intentionally disinherits her niece Jane E. Norton entirely." Instead, decedent left $100,000 to her sister, Aimee Dorney; $75,000 to another sister, Terese Behrens; $10,000 to Our Lady of Refuge Catholic Church; and the remainder of her estate to Catholic Eldercare Charity of Long Beach.

The omission of appellant as a beneficiary was consistent with the wishes expressed by decedent to Attorneys Hamilton, Hayter and Hartford. D'Sa disclaimed responsibility for drafting the last two amendments to the Trust, although he transported decedent when she went to have the amendments notarized. The notary testified that her journal contains no references to the third and fourth amendments to the Trust.

Decedent's physician saw her regularly, starting in April 2008, and while decedent complained of forgetfulness and memory loss, she kept all of her medical appointments. Decedent also saw (and winked at) her physician at the 5:00 p.m. daily mass at St. Cornelius, she seemed to know who her family was and she had her wits about her. Decedent passed basic competency questions asked by the physician, who believed that she was in the early stages of Alzheimer's Disease and prescribed medication for it. Decedent last saw her doctor on May 26, 2009, two weeks before her death.

Decedent died on June 10, 2009. Appellant learned of decedent's passing six months later, during a telephone conversation with family members on December 22, 2009. Appellant also learned that decedent had amended the Trust, omitting appellant as successor trustee and beneficiary.

Catholic Eldercare Charity disclaimed its interest in the Trust on March 8, 2010. On June 4, 2010, appellant filed a petition to determine the validity of decedent's third and fourth amendments to the Trust, to remove D'Sa as successor trustee and impose a

4

constructive trust. Appellant alleged that D'Sa exerted undue influence to procure the Trust amendments.

## THE TRIAL COURT'S RULING

The petition came to trial in October 2011. The trial court bifurcated the issues. It first heard evidence regarding the timeliness of appellant's claims, and decided that the claims were not barred by the statute of limitations. The court then tried the merits of appellant's claims.

In a 24-page judgment filed March 2, 2012, the trial court denied appellant's petition and entered judgment in favor of D'Sa. The court found that appellant "has a consistent pattern of dishonesty" that is evidenced by her criminal conviction for fraud and her "untruthful testimony" during trial. The court acknowledged D'Sa's "failure to pass the moral background check" for admission to the state bar; nonetheless, it tended to believe D'Sa because appellant "deliberately testified untruthfully." The court determined that appellant received notice of her removal as cotrustee.

The court wrote that decedent had full and complete capacity each time she amended the Trust. Attorney Hayter and his notary both testified that decedent was lucid. Decedent's physician conducted "a mini mental exam" and determined that decedent did not have functional impairments that would make her incompetent. Decedent expressed to several people a desire to remove appellant as a Trust beneficiary, years before she made the amendments.

There was no showing of fraud or deceit to justify voiding the last two amendments to the Trust. A claim of undue influence requires a confidential relationship, active participation in procuring the execution of documents, and undue benefit to the person exerting influence. The court wrote that "there was insufficient evidence" from appellant to carry this burden. Although D'Sa had a confidential relationship with decedent, and procured execution of the Trust amendments, he was not the beneficiary. The beneficiary was the Catholic Elder Care Charity, which disclaimed its interest in the Trust.

5

## DISCUSSION

### 1. Appealability

The trial court has jurisdiction over trust affairs. (Prob. Code, § 17000.) Purported heirs may petition for the purpose of "[a]scertaining beneficiaries and determining to whom property shall pass or be delivered upon final or partial termination of the trust, to the extent the determination is not made by the trust instrument." (Prob. Code, § 17200, subd. (b)(4).) An order identifying beneficiaries and determining to whom property shall pass is appealable. (Prob. Code, § 1304, subd. (a); Code Civ. Proc., § 904.1, subd. (a)(10); *Estate of Stoddart* (2004) 115 Cal.App.4th 1118, 1125.)

### 2. The Court's Credibility Rulings

Appellant challenges the trial court's admission of evidence showing specific instances of misconduct—including a misdemeanor criminal conviction—that damaged her credibility. Evidentiary rulings are reviewed for an abuse of discretion. (*Zhou v. Unisource Worldwide* (2007) 157 Cal.App.4th 1471, 1476.) Admission of a criminal conviction in a civil action "is very much subject to the exercise of a court's discretion," depending on whether its probative value is outweighed by its prejudicial effect. (*Nguyen v. Proton Technology Corp.* (1999) 69 Cal.App.4th 140, 151; *Robbins v. Wong* (1994) 27 Cal.App.4th 261, 274; Evid. Code, §§ 352, 788.)

In its judgment, the trial court found that appellant is "lacking in credibility." It cited appellant's guilty plea to charges involving crimes of moral turpitude, stemming from fraudulent representations she made to federal agencies, which is "instructive as to Jane Norton's general pattern of disingenuous behavior." Though evidence of appellant's criminal conviction was "stipulated to be admitted into evidence," the court "gave this evidence little weight. The untruthful testimony given by Jane Norton during the trial was the primary evidence used by the court to determine her credibility." Because she "testified falsely," the trial court gave appellant's testimony "little to no weight."

In her supplemental opening brief, appellant points to trial exhibits 54, 55, 75 and 76 as being objectionable because they reference her criminal proceeding. Appellant

6

stipulated to the admission of trial exhibits 55 and 75.[1] Her counsel had "no objection" to these exhibits, which are records of the Medical Board regarding the suspension and surrender of appellant's medical license. The Medical Board records discuss appellant's guilty plea to two counts of defrauding the federal government, as well as appellant's history of performing grossly negligent surgeries on a patient, then lying about it. With respect to trial exhibits 54 and 76, these are records from the criminal proceeding against appellant in the United States District Court in New York. Appellant did not object to the admission of these judicial records.

A judgment cannot be reversed, even if evidence was erroneously admitted, unless the record contains a timely objection or motion to exclude or strike the evidence, and the grounds for doing so. (Evid. Code, § 353, subd. (a).) Failure to object during trial generally forfeits the issue on appeal, except in rare cases. (*In re S.B.* (2004) 32 Cal.4th 1287, 1293; *People v. Saunders* (1993) 5 Cal.4th 580, 589.) Appellant did not make a timely objection to the trial exhibits she challenges on appeal. In fact, she expressly stipulated to the use of two of them for any purpose.

Appellant asks this Court, in her supplemental brief, to disregard the lack of any objection to the evidence, and her stipulation to admit the evidence. She relies on inapposite cases that presented important legal issues or involved the public interest. (See, e.g., *Bayside Timber Co. v. Board of Supervisors* (1971) 20 Cal.App.3d 1, 4-5.) This case does not present an important legal issue or involve the public interest.

Even if an objection had been made, it would not assist appellant, because there must also be a showing that the erroneous admission of the evidence "resulted in a miscarriage of justice." (Cal. Const., art. VI, § 13; Evid. Code, § 353, subd. (b).)[2] There

---

[1]      The parties stipulated to 12 exhibits, including Nos. 55 and 75. As the stipulations were made, the court said, "So those exhibits are admitted. The record can be clear that *they are admitted for all purposes* throughout the remainder of this trial." (Italics added.)

[2]      The constitutional provision reads, "No judgment shall be set aside . . . in any cause, on the ground of . . . the improper admission or rejection of evidence, . . . unless,

was no miscarriage of justice in this case. The trial court expressly stated, with respect to evidence instructive of appellant's pattern of dishonesty, that it "gave this evidence little weight" and instead made its credibility findings based on appellant's "untruthful testimony" during trial. Because the trial court found appellant's testimony unbelievable—even without evidence of criminality—we cannot say that the federal court records or the Medical Board records affected the outcome.

## 3. Finding of Trustor Capacity and Absence of Undue Influence

Appellant asserts that the trial court's erroneous credibility determinations infected its ultimate finding that decedent had the capacity to amend the Trust to remove appellant as successor trustee and as beneficiary, and was not unduly influenced to do so. As discussed in the preceding section, the court's credibility determination was based on its perception that appellant's trial testimony was false. We do not revisit the lower court's credibility determinations on appeal. (*Reilly v. Inquest Technology, Inc.* (2013) 218 Cal.App.4th 536, 558 [judges and juries "'are the exclusive judges of credibility and may disbelieve any witness'"].)

A legion of decisions have rejected attempts to invalidate testamentary documents on the ground of undue influence. (*Estate of Fritschi* (1963) 60 Cal.2d 367, 373.) Further, the Legislature created a presumption that all persons have the capacity to make testamentary dispositions, which can only be rebutted with a showing that the person "is totally without understanding," has an unsound mind, or suffers substantial mental deficits. (Prob. Code, § 810.) Apart from the person's alertness (being oriented to time, place, person and situation), the court also considers the ability to process information; communicate with others; recognize people; engage in logical reasoning and planning; and whether the person is delusional or hallucinatory. (Prob. Code, § 811.)

The trial court's findings are supported by substantial evidence. Attorney Hartford spoke to decedent twice in 2009, and decedent was adamant about removing appellant

---

after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice."

8

from the Trust; the lawyer had no concerns about decedent's capacity, and she understood the nature of her request.  Attorney Hayter likewise testified that decedent expressed displeasure with appellant in 2008, and wished to omit appellant as a beneficiary.  Hayter found decedent to be lucid, coherent and in control of her faculties.  Attorney Hamilton testified that decedent expressed a desire, in 2007, to leave assets to her sisters, not appellant; this conversation occurred one year before decedent met D'Sa.

After moving to New York in 2007, appellant concededly had little contact with her elderly aunt before decedent's death in June 2009, at age 89.  Appellant had so little awareness of or interest in decedent's health and well-being that she did not even know of decedent's passing for half a year.  By comparison, decedent's physician saw decedent regularly, at daily mass and at her medical office.  The physician last saw decedent only two weeks before her death.  Decedent had her wits about her, knew who her family was, and passed basic competency questions.  The physician's testimony, alone, shows capacity.

There is no reason why the trial court would credit the testimony of appellant—who effectively abandoned decedent and did not see her for two years—over the testimony of financially disinterested witnesses—decedent's doctor and lawyers—who saw or spoke to decedent in the years before her death.  Appellant can only speculate that decedent lacked capacity or was unduly influenced.  D'Sa himself is not a beneficiary of the Trust, leaving a critical prong—the requirement of undue profit accruing to the person exerting influence—unmet.  (See *Estate of Sarabia* (1990) 221 Cal.App.3d 599, 605 [undue influence requires (1) a confidential relationship; (2) active participation in the preparation of the will; and (3) undue profit].)

9

**4. New Arguments and New Evidence**

Appellant attempts to raise a host of new arguments in her reply brief. Arguments raised for the first time in a reply brief cannot be considered. (*Mt. Hawley Ins. Co. v. Lopez* (2013) 215 Cal.App.4th 1385, 1426.) "As it is unfair for an appellant to raise issues for the first time on appeal in a reply brief, we will not address them." (*Smith v. Board of Medical Quality Assurance* (1988) 202 Cal.App.3d 316, 329, fn. 5.)

We deny appellant's request to submit new evidence that was not presented in the trial court, specifically, an unauthenticated hospital record. Appellant's new evidence relates to an issue that was not raised in either of her two opening briefs on appeal: the authenticity of the fourth amendment to the Trust. The opening briefs address the trial court's admission of certain evidence relating to appellant's medical license and her criminal record. The briefs do not question the authenticity of decedent's signature or the notarization, neither of which were at issue at trial.

**5. Sanctions**

D'Sa requests that sanctions be imposed on appellant for pursuing a frivolous appeal. (Code Civ. Proc., § 907.) "[A]n appeal should be held to be frivolous only when it is prosecuted for an improper motive—to harass the respondent or delay the effect of an adverse judgment—or when it indisputably has no merit—when any reasonable attorney would agree that the appeal is totally and completely without merit." (*In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 650.)

Appellant's appeal certainly flirts with the standards for a frivolous appeal, because she challenges evidence that she failed object to in the trial court, and even stipulated that the evidence could be used for any purpose. At the end of the day, however, appellant is challenging the sufficiency of the evidence to support the judgment, an argument that is not totally without merit.

10

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


BOREN, P.J.

We concur:


CHAVEZ, J.


FERNS, J.*

_____

\*      Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

11